# STATE OF MICHIGAN

# COURT OF APPEALS

PTN-NRS, LLC,

      Plaintiff-Appellant,

v

COUNTY OF WAYNE,

      Defendant-Appellee.

UNPUBLISHED
October 5, 2017

No. 332135
Wayne Circuit Court
LC No. 13-012537-CK

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order partially granting defendant's motion for summary disposition on plaintiff's complaint pursuant to MCR 2.116(C)(8) and the trial court order granting summary disposition in defendant's favor on plaintiff's first amended complaint asserting breach of contract pursuant to MCR 2.116(C)(10) and dismissing plaintiff's complaint.[1] We reverse and remand for proceedings consistent with this opinion.

In 2009, plaintiff and defendant entered into a contract whereby plaintiff would have the exclusive right and obligation to identify, solicit and pursue opportunities for defendant to earn revenue through sponsorships, naming rights, and similar advertising and promotions. For its services, plaintiff was to receive 25% of all revenues for revenue contracts it procured for defendant. According to plaintiff, it procured numerous opportunities for new revenue sources for defendant, yet defendant failed to abide by its obligations under the contract. Specifically, plaintiff alleged that defendant failed to effectuate the terms of a certain revenue agreement negotiated by plaintiff, and that defendant failed to provide information for and to implement numerous other (unidentified) proposed revenue contracts thereby breaching the parties' contract and causing damage to plaintiff. As a result, plaintiff brought a one count complaint for breach of contract against defendant.

---

[1] Plaintiff's amended complaint also asserted claims for promissory estoppel and fraudulent misrepresentation which were dismissed pursuant to MCR 2.116(C)(10) and (C)(7), respectively. Plaintiff does not challenge the dismissal of these claims on appeal.

-1-

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8), contending that the parties' contractual language did not *require* it to accept any proposed revenue opportunities procured or submitted by plaintiff, but instead merely provides that defendant "may" approve and sign contracts with the proposed revenue opportunities. That being the case, any decision to approve or deny plaintiff's proposed revenue opportunities was within defendant's discretion and defendant's failure or refusal to approve any specific opportunity, specifically the only one identified by plaintiff as the Coca-Cola pouring rights agreement[2], could not be the basis of a breach of contract action. Defendant further argued that plaintiff's failure to identify or attach to the complaint the specific other numerous revenue contracts it purportedly failed to provide information for or implement required a grant of summary disposition in defendant's favor, as did the speculative nature of plaintiff's proposed damages. The trial court agreed with defendant and granted its motion, but gave plaintiff 14 days to amend its complaint *solely* with respect to the allegation that defendant failed or refused to provide information to plaintiff for numerous revenue opportunities "which do not include the Coca Cola Pouring Right Agreement, to plead very specifically, breach of contract, fraud and misrepresentation."

Plaintiff thereafter filed a first amended complaint adding allegations that it provided defendant with revenue and savings opportunities, including the I-94 beautification project, the LED lighting project, the LED network project, and the 511 Woodward LED project. Plaintiff alleged that defendant refused and/or failed to abide by the parties' agreement and that these actions were in bad faith and amounted to a breach of the contract. Plaintiff's first amended complaint presented counts for breach of contract, promissory estoppel, and fraudulent misrepresentation.

Defendant moved for summary disposition on plaintiff's first amended complaint pursuant to MCR 2.116(C)(7) and (10). Defendant argued that plaintiff materially breached the parties' contract first by not meeting the contract's revenue benchmarks, and could not demonstrate that defendant breached any revenue opportunity contract such that summary disposition was appropriate as to plaintiff's breach of contract claim. Defendant additionally asserted that plaintiff's promissory estoppel claim must fail because there was a written agreement between the parties, and that plaintiff's fraudulent misrepresentation claim is barred by governmental immunity. In a March 1, 2016 order, the trial court granted defendant's motion and dismissed plaintiff's case. This appeal followed.

Appellate review of a motion for summary disposition is de novo. *Spiek v Michigan Dept of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Summary disposition may be granted pursuant to MCR 2.116(C)(7) when, among other things, a claim is barred by governmental immunity. When considering a motion brought under subrule (C)(7), a court must consider any affidavits, depositions, admissions, or other documentary evidence submitted by the parties to

---

[2] A pouring rights agreement has been described as one granting a beverage maker or distributer the exclusive right to have its products sold at a venue or venues and which, in return, provides stream(s) of revenue to the other contracting party.

-2-

determine whether there is a genuine issue of material fact precluding summary disposition. *Dybata v Wayne Co*, 287 Mich App 635, 637–38; 791 NW2d 499 (2010). If no facts are in dispute, then the question whether the claim is barred by governmental immunity is an issue of law. *Id*. If, on the other hand, a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate under subrule (C)(7). *Id*.

MCR 2.116(C)(8) tests the legal sufficiency of a claim, on the pleadings alone, to determine whether the plaintiff has stated a claim on which relief may be granted. *Spiek*, 456 Mich at 337. A motion brought under (C)(8) must be granted if no factual development could justify the plaintiff's claim for relief. *Id*.

A motion under MCR 2.116(C)(10) tests the factual support for a claim. *1300 LaFayette E Coop, Inc v Savoy*, 284 Mich App 522 (2009). When reviewing a motion under MCR 2.116(C)(10), the court must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. *Id*. If there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, summary disposition is properly granted under MCR 2.116(C)(10). *Id*.

Plaintiff first asserts that the trial court erred in granting defendant's first motion relating to the Coca-Cola contract when plaintiff's complaint stated a valid claim for breach of contract, sufficient to survive under MCR 2.116(C)(8). We agree.

A complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend . . . ." *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010), quoting MCR 2.111(B)(1). If a party fails to plead facts with sufficient detail, the court should permit the party to file an amended complaint setting forth its claims in more specific detail. *Dalley*, 287 Mich App at 306. To state a claim for breach of contract, plaintiff must allege a contract, a breach of that contract, and damages. M Civ JI 142.01, citing *McInerney v Detroit Trust Co*, 279 Mich 42, 46; 271 NW 545 (1937).

In its original complaint, plaintiff generally alleged that it entered into a contract with defendant giving plaintiff the exclusive right and obligation to pursue and identify revenue opportunities for defendant. Plaintiff would receive 25% of the revenue contracts received by defendant for its services. The contract, which was attached to the complaint, was effective from November 5, 2009, through September 30, 2013, with an automatic 3 year renewal if the "target" revenue goal was met. Plaintiff alleged that it successfully negotiated a pouring rights agreement for defendant with Coca-Cola, but that despite acknowledging the existence of the agreement and plaintiff and defendant's agreement, defendant refused to put the terms of the parties' agreement into effect. In its breach of contract claim, plaintiff alleged that defendant breached its contract with plaintiff when it failed to provide plaintiff "with the information and support needed for the Coca-Cola Pouring Rights Agreement and hindered [plaintiff's] efforts to perform under the contract." Plaintiff further alleged that defendant breached the parties contract when it 'refused to put the terms of the Coca-Cola Pouring Rights contract into effect" and by "failing and/or refusing to implement the opportunities identified by Plaintiff and by refusing to provide information and assistance as required by the Primary Agreement." Plaintiff asserted that these

failures/refusals caused defendant to lose hundreds of thousands of dollars in revenue and resulted in corresponding damages to plaintiff. The contract itself, a part of the complaint, provides at least one obligation on the part of defendant consistent with the allegations in plaintiff's complaint. For example, at section 5.01 the contract provides: "Upon the request of [plaintiff], without charge, [defendant] must furnish copies of all information, data, reports, records, etc. that [defendant] and [plaintiff] believe are necessary for [plaintiff] to provide the Work contemplated by this Agreement."

As set forth above, plaintiff alleged the existence of a valid contract, a breach of that contract by defendant, and damages as a proximate result of the breach by defendant. The trial court thus erred in finding that plaintiff failed to state a cause of action for breach of contract. It is true, as the trial court pointed out, that the contract places no obligation on defendant to implement or approve any revenue opportunity obtained by plaintiff. However, the contract does require defendant to furnish information necessary for plaintiff to perform its required work under the contract and plaintiff has alleged that defendant failed to do so. Whether this was a failure to provide necessary information in order to get the Coca-Cola pouring revenue contract to the Wayne County Commission or otherwise would bear out in discovery, and the trial court's reliance on defense counsel's factual statements at oral argument provided no basis for granting summary disposition based upon the pleadings alone, under MCR 2.116(C)(8).

Moreover, an implied covenant of good faith and fair dealing generally exists in all contracts, except employment contracts, which is an implied promise that neither party will do anything "which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hammond v United of Oakland, Inc*, 193 Mich App 146, 151–152; 483 NW2d 652 (1992). This implied covenant applies to the performance and enforcement of contracts even where a contractual term leaves the manner of its performance to one party's discretion. *Ferrell v Vic Tanny Int'l, Inc*, 137 Mich App 238, 243; 357 NW2d 669 (1984). Where a party to a contract makes the manner of performance a matter of its own discretion, it must exercise that discretion honestly and in good faith. *Id*. at 243. Michigan does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself. *Belle Isle Grill Group v City of Detroit*, 256 Mich App 463; 666 NW2d 271 (2003). However, because the focus of the obligation of good faith is on the manner in which the agreement or other duty is performed or enforced, a breach of contract may be found where bad faith or unfair dealing exists in the performance of a contractual term when the manner of performance was discretionary. See *Ferrell*,137 Mich App at 243–244; *Gorman v Am Honda Motor Co, Inc*, 302 Mich App 113, 132-136; 839 NW2d 223 (2013).

In sum, plaintiff has sufficiently alleged a breach of contract claim. Not only did it allege that specific provisions in the parties' contract were breached, but it also sufficiently alleged a breach of contract based upon bad faith or unfair dealing. The trial court erred in granting partial summary disposition of plaintiff's first complaint based upon MCR 2.116(C)(8).

Plaintiff next contends that the trial court erred in dismissing its case and granting summary disposition in defendant's favor on plaintiff's amended breach of contract claim based upon MCR 2.116(C)(10) where issues of fact existed concerning whether defendant's breaches of the parties' contract made plaintiff's performance impossible. We agree.

-4-

The trial court granted defendant's motion on plaintiff's breach of contract claim based on its observation that it had not seen any evidence that defendant obstructed or precluded plaintiff from performing its part of the contract, but that the documentary evidence submitted did show that plaintiff failed to meet the contractually required benchmark revenue target by September 30, 2010. While defendant reads the trial court's oral statement as a pronouncement that plaintiff's failure to meet the benchmark constituted the first material breach of the parties' contract, and thus precluded plaintiff from bringing its breach of contract claims, it is not entirely clear that this was the basis for the trial court's summary disposition ruling. The trial court did state that plaintiff breached the parties' contract by failing to meet the September 2010 revenue benchmark. Plaintiff does not dispute that it failed to meet the benchmark. The focus of the oral argument, however, and thus the more readily apparent basis for the trial court's ruling, was on the evidence, or lack thereof, creating a material question of fact concerning plaintiff's allegations in its first amended complaint that defendant breached the parties contract by: (1) refusing and/or failing to provide plaintiff with information and support for various revenue opportunities; (2) failing to act in good faith when it failed to assist plaintiff as required by the contract; (3) failing to act in good faith when it failed to assist plaintiff's efforts to perform under the contract, and; (4) when, in bad faith, it failed and/or refused to implement the opportunities identified by plaintiff and by refusing to provide information and assistance as required by the parties' contract. Plaintiff's argument was essentially that defendant breached the parties' contract by interfering with plaintiff's performance under the contract which, in turn, caused plaintiff to breach. The trial court found that there was no evidence that defendant breached the parties contract in such a manner. Only if plaintiff had provided evidence of some breach of contract by defendant would defendant's argument that plaintiff breached the contract first come into play.

Again, to establish a breach of contract claim, a party must establish that (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting the breach suffered damages as a result of the breach of contract. *Dunn v Bennett*, 303 Mich App 767, 774; 846 NW2d 75 (2013). Determining whether the trial court erred by concluding that defendant did not breach the contract requires us to interpret the underlying contractual language. We review de novo the proper construction and interpretation of a contract as a question of law. *Perry v Sied*, 461 Mich 680, 681, n 1; 611 NW2d 516 (2000). "A trial court may determine the meaning of the contract only when the terms are not ambiguous," and terms are ambiguous if they are "susceptible to two or more reasonable interpretations." *D'Avanzo v Wise & Marsac PC*, 223 Mich App 314, 319; 565 NW2d 915 (1997).

Plaintiff contends that the defendant's failure to provide information and assistance regarding the Coca-Cola pouring contract made it impossible to get that contract signed faster and that the Coca-Cola contract would have contributed toward the benchmark revenue. As we found above, the trial court erred in granting summary disposition in defendant's favor on plaintiff's original breach of contract claim as it pertained to the Coca-Cola pouring agreement. Plaintiff was precluded from alleging or arguing any facts with respect to the Coca-Cola pouring agreement in its first amended complaint or at the oral argument on defendant's second motion for summary disposition. As a result, the trial court did not and would not have ruled with respect to a claim that defendant failed to provide information with respect to the Coca-Cola pouring agreement or a claim that defendant acted in bad faith when it failed to assist plaintiff's efforts to perform under the contract. Remand is therefore necessary for the trial court to

determine whether material questions of fact exist concerning plaintiff's breach of contract claim pertaining to the Coca-Cola pouring agreement.

With respect to whether questions of fact existed as to the breaches of contract as they were set forth in plaintiff's first amended complaint, plaintiff directs us to the documents submitted in support of its response to defendant's motion for summary disposition. Of relevance to the matters at hand,[3] plaintiff attached the affidavit of Timothy Nasso, the Chief Operating Officer for Wayne County from January 3, 2012, until December 2014. Nasso swore that he had significant marketing experience (including having been the director of global marketing for The Dow Chemical Company and Dow Automotive and that based upon his experience and background) and how defendant handled the Coca-Cola pouring contract was incomprehensible. Nasso further swore that overall, during the time he worked for defendant, information that was given to plaintiff was not timely and some of the requested information was never provided.

Ronald Makino's (president of plaintiff) deposition was also part of the lower court record. Makin testified that Steven Collins, his default contact for defendant, was very difficult to coordinate with and receive answers from. According to Makino, he and Collins would set up a meeting and Collins would "blow it off," would not answer phone calls for weeks at a time, and would not address issues for weeks at a time. Makino further testified that Clarence McNeal, the County's director of purchasing, told him shortly after the parties' contract went into effect that he had a wealth of information to assist plaintiff. According to Makino, McNeal sent him to a couple of useless places, and then stopped returning his phone calls and emails before telling Makino several months later that he couldn't help him and he was going to have to just start from scratch. Makino further testified that he had asked about banking information to see about a bank sponsorship and did not receive any information regarding that. Further, Makino researched the jail commissary contract with its concessionaire and it had expired. Makino testified that Maddasser Tawakul, defendant's director of purchasing, lobbied the commissary board on three occasions to extend the concessionaire's contract and did so without speaking to plaintiff.

Plaintiff also relies heavily upon a letter addressed to defendant county department directors and deputy directors from Elder. In the September 14, 2011 letter, Elder introduces plaintiff and indicates that defendant has contracted with it for the "sole purpose of developing opportunities for Wayne County in the naming Rights and Sponsorship areas." Elder asks, "Please make contact with [plaintiff] before implementing any new product, service, or lease contract for potential opportunities." In answers to interrogatories, defendant provided information concerning leases and contracts for revenue opportunities it had entered into from 2010 through 2013 without having contacted plaintiff. For example, defendant approved the extension of an agreement with Warren Valley and Inkster Valley Golf Courses on or about July

---

[3] Because this Court is remanding to the trial court for consideration of issues concerning the Coca-Cola pouring rights agreement, we will not address any specific evidence concerning that agreement.

15, 2010. While the Elder letter is not a part of the parties' contract and serves as more of an introduction of plaintiff, it does indicate that at least defendant's deputy county executive believed that information should be provided to plaintiff prior to the implementation of any new service, lease, or product so that plaintiff could identify potential revenue opportunities. Defendant's failure to provide information to plaintiff concerning its contracts and leases that could present opportunities for potential additional revenue could be deemed a breach of defendant's contractual obligations.

As pointed out by defendant, plaintiff did obtain some information about defendant on its own. Vetra Stephens, regional director of corporate accounts for plaintiff, provided an affidavit wherein she swore that in early 2010 she and defendant's maintenance supervisor visited each county owned and/or operated site and that she created a list of revenue opportunity sites from those visits. Stephens swore that among those on the list were what the parties referred to as the 511 Woodward Project, the I-94 beautification project, and the LED lighting project. However, the parties' agreement provided plaintiff with the exclusive right and obligation to identify, solicit, pursue, and develop "opportunities for the County to earn additional revenues through corporate or other commercial sponsorship, naming rights, and/or similar advertising and promotional transactions." While Stephens could identify site locations for potential revenue opportunities, without information concerning any existing contracts, leases, or other relevant revenue information regarding the sites, plaintiff could not adequately perform its job functions.

Because there is evidence creating a question of material fact as to whether defendant breached the parties' contract, defendant's argument that plaintiff was the first to breach is relevant. It has long been held that "one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994), quoting *Flamm v Scherer*, 40 Mich App 1, 8-9; 198 NW2d 702 (1972).

As previously indicated, the parties' contract contained a target revenue schedule that plaintiff was to meet. Appendix B to the parties' contract provides that plaintiff and defendant have agreed that "during the Term [plaintiff] shall provide Revenue Contracts to [defendant]. [Defendant] shall have the ability to terminate this Contract pursuant to the provisions of Section 16.01 if [plaintiff] does not provide the following revenues to [defendant] during the time periods indicated." Appendix B thereafter sets forth the relevant time periods and target revenues for the following time periods (1) beginning with the commencement of the contract to September 30, 2010; (2) October 1, 2010 through September 30, 2011; (3) October 1, 2011 through September 30, 2012, and; (4) October 1, 2012 through September 30, 2013. The following sentence then appears in Appendix B: "[Plaintiff] shall be bound to provide the cumulative revenues to [defendant] prior to the end of the [defendant]'s fiscal year of September 31, 2011. If [plaintiff] is unable to meet the cumulative revenues indicated [defendant] shall have the ability to terminate the contract under provision 16.01.

Notably, the above contractual language is less than clear as to exactly when plaintiff could be deemed to have breached the parties' contract with regard to providing revenues to defendant. The beginning of Appendix B suggests that plaintiff is required to provide the stated revenues on a yearly basis, with the first revenue due date being September 30, 2010. However, the later sentence in Appendix B specifically states that plaintiff is bound to provide the revenues

prior to September 31, 2011. This ambiguous contractual language provides a question of fact as to when plaintiff could be deemed to have first breached the parties' contract. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467, 469; 663 NW2d 447 (2003)(A contract is ambiguous when two provisions are capable of conflicting interpretations or irreconcilably conflict with each other and when contractual language is ambiguous, its meaning become a question of fact).

Moreover, the rule that a party who first breaches a contract cannot sue the other party for breach of contract applies only when the initial breach is substantial. *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994). As our Supreme Court has stated, such a breach:

> can be found only in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party. [*McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (citations omitted).]

The more oft used and comparative "material" breach of contract standard requires a court to consider whether the nonbreaching party obtained the benefit it reasonably expected to receive as well as:

> the extent to which the injured party may be adequately compensated for damages for lack of complete performance, the extent to which the breaching party has partly performed, the comparative hardship on the breaching party in terminating the contract, the wilfulness of the breaching party's conduct, and the greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract. [*Omnicom of Michigan v Giannetti Inv Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997) (internal citation omitted)].

Defendant points out that section 16 of the parties' contract defines plaintiff's failure to meet the target revenue as a material breach of contract. Indeed, Section 16, entitled "Termination" states at section 16.01, in pertinent part:

> If [plaintiff] materially breaches the Agreement, [defendant] may terminate the agreement after giving [plaintiff] written notice . . . of its intention to terminate for default , together with a reasonable identification of the reasons giving rise to the notice . . . . If [plaintiff fully cures the identified default within the specified notice period, and [defendant] shall revoke the notice in writing . . . it will not take effect.

Section 16.01 then lists actions taken by plaintiff that "will be deemed to constitute 'material breach' of the Agreement" including "failing to obtain Revenue Contracts that provide [defendant] with compensation schedule listed in Exhibit (sic) B."

Given that plaintiff's failure to meet revenues is defined as a material breach in the context of defendant's right to terminate the agreement and defendant did not terminate the agreement, it is questionable whether plaintiff's failure was deemed to be a material breach

*outside* of the context of termination and whether defendant did, in fact, consider this failure a material or substantial breach.

In any event, plaintiff does not dispute that it failed to generate any revenues in 2010 or, in fact, any revenues as a result of the parties' contract. Assuming, without deciding, that plaintiff was in breach of the parties' contract as of September 30, 2010 (the first revenue target date), plaintiff nevertheless presented evidence that defendant failed to provide it information concerning at least one contract defendant renewed in July 2010 that could have potential revenue opportunities. It also presented evidence that defendant did not provide information requested to assist it in developing its work on potential revenue producing opportunities. Because plaintiff presented evidence creating a material question of fact as to whether defendant breached the parties' contract, and did so first, the trial court erred in granting summary disposition in defendant's favor on plaintiff's breach of contract claim.

Reversed and remanded for proceedings consisted with this opinion. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Deborah A. Servitto