MICHAELS v AMWAY CORPORATION

Docket No. 156629. Submitted April 12, 1994, at Grand Rapids.
Decided September 6, 1994, at 9:45 A.M.

Shirlee Michaels and Joan Baker brought an action in the Kent
Circuit Court against Amway Corporation, alleging that the
defendant breached its contract with the plaintiffs as high-level
distributors in its pyramid sales structure by permitting some
of the plaintiffs' down-line distributors to transfer to the sales
network of another high-level distributor contrary to the provi-
sions in the defendant's Business Reference Manual. The plain-
tiffs also alleged violation of the provisions of the Michigan
Consumer Protection Act and fraud. The defendant conceded
that it was bound by the provisions of the manual, but claimed
that the time requirement set forth in the manual for the
transfer of distributors could be waived pursuant to the reser-
vation-of-rights provision in the manual, which reserved to the
defendant "the sole right to adopt, amend, modify, supplement,
or rescind" any rule or portion of a rule necessary to promote
the goals and objectives of the sales plan. The defendant
further claimed that the plaintiffs could not assert their con-
tractual rights under the manual because they had breached
their contractual duties by failing to supply, train, and moti-
vate their distributors properly and had attempted to involve
their distributors in the sale of another product. The court,
George R. Buth, J., granted summary disposition for the defen-
dant. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court erred in holding that the reservation-of-
rights provision of the manual authorized the defendant to
waive the time requirement of the manual with respect to the
transfer of the specific distributors at issue in this case. The
power to amend, modify, or rescind rules does not encompass
necessarily the power to create exceptions to rules case by case.
Although the defendant has the power to amend a rule in the

REFERENCES

Am Jur 2d, Contracts, §§ 513, 520-522, 621, 701.
See ALR Index under Contracts.

manual if the change would affect all of its distributors equally, it does not have unequivocal power to change a rule at will case by case, as it did here. The contractual language being ambiguous, summary disposition for either party would be inappropriate.

2. Although one who substantially breaches a contract cannot maintain an action against the other contracting party for that party's subsequent breach of contract, the record, viewed in the light most favorable to the plaintiffs, does not demonstrate conclusively a substantial breach of contract by the plaintiffs. Accordingly, the trial court erred in granting summary disposition for the defendant with respect to the claim for breach of contract.

3. The claim of unfair business practices under the Michigan Consumer Protection Act is an extension of the claim for breach of contract, and, accordingly, summary disposition should not have been granted with respect to that claim.

4. A claim based on fraud requires a misrepresentation of a past or existing fact. Because the plaintiffs' claim that the defendant misrepresented the meaning of the reservation-of-rights provision was not a misrepresentation of a past or existing fact, the trial court did not err in granting summary disposition for the defendant with respect to the plaintiffs' fraud claim.

Affirmed in part, reversed in part, and remanded.

1. CONTRACTS — AMENDMENT OF CONTRACTS — WAIVER OF CONTRACT PROVISIONS.

   The power to amend, modify, or rescind the provisions of a contract covering a large number of persons does not encompass necessarily the power to create exceptions to the provisions with respect to specific persons case by case.

2. CONTRACTS — ACTIONS — BREACH OF CONTRACT.

   One who first substantially breaches a contract cannot maintain an action for the subsequent breach or failure to perform by the other contracting party.

*Buchanan & Bos* (by *Bradley K. Glazier* and *Gwen E. Buday*), for the plaintiffs.

*Cynthia Stoddard Fitzgerald* and *Cholette, Perkins & Buchanan* (by *Robert E. Attmore*), for the defendant.

Before: MICHAEL J. KELLY, P.J., and HOOD and
S. B. MILLER,* JJ.

MICHAEL J. KELLY, P.J. Plaintiffs appeal as of
right a circuit court order granting defendant's
motion for summary disposition. We affirm in part
and reverse in part.

I

Plaintiff Shirlee Michaels became affiliated with
defendant Amway Corporation as a distributor in
1969. An Amway distributor's business grows by
sponsoring other "down-line" distributors and
thereby establishing a personal distribution net-
work. Michaels sponsored plaintiff Joan Baker and
her husband in 1975. The Bakers in turn spon-
sored Mary and Maurice VanDusen and Marlis
and Donald Shamblin. In 1979, the VanDusens
sponsored George and Barbara Simmons. In 1985,
the Shamblins sponsored Lillian Cummings. The
Simmonses and Cummings in turn each estab-
lished their own networks of down-line distributors
so that, by 1990, plaintiffs Michaels and Baker
stood atop a large and lucrative pyramid of down-
line distributors and operated their own sizeable
Amway warehouses.

In 1983, the Bakers moved to Hong Kong and
set up servicing agreements with several other
high-level Amway distributors in order to ensure
that their down-line distributors would have conti-
nuity of supply in their absence. One of those
agreements was with Dick and Doreen Yost, who
agreed to provide Amway products for the Sim-
monses and Cummings, among others. When the
Bakers returned from Hong Kong in 1987, they
terminated most of the servicing agreements, in-

* Circuit judge, sitting on the Court of Appeals by assignment.

cluding the agreement with the Yosts, and re-opened their Amway warehouse.

The Bakers kept regular pickup hours at their warehouse from 3:00 P.M. to 5:00 P.M. on Mondays and Thursdays. They used these hours to discuss training and motivating of new distributors. The Bakers also maintained contact with their distributors by setting up lunch and dinner appointments with members of their distribution group.

In August 1989, the Bakers began selling a health drink manufactured by a company called Matol. The Bakers met with George Simmons, among other down-line distributors, to advise him of their association with Matol and to assure him that their primary commitment was to Amway. Defendant received complaints from Simmons and other down-line distributors. Although Simmons was not actively solicited to join the Matol business, he contacted defendant after the meeting to complain about the Bakers' involvement with Matol. In January 1990, Paul Burt, of defendant's Business Conduct and Rules Department, informed the Bakers that the Code of Ethics and Rules of Conduct in defendant's Business Reference Manual (BRM) prohibited them from selling Matol to any Amway distributors except those directly sponsored by them.

Three times in the spring and summer of 1990, George Simmons requested a transfer to another network of distributors, citing the Bakers' Matol business and their alleged failure to offer enough meetings to down-line distributors. However, defendant's BRM provides that a distributor wishing to change sponsors must be inactive for six months and that a distributor wishing to take along down-line distributors must be inactive for two years.

Notwithstanding these rules, the Simmonses were able to terminate their association with the

Bakers' in December 1990, and transfer to the Yosts' network in January 1991. Eight down-line distributors accompanied them. Robert Kerkstra, the director of defendant's Business Conduct and Rules Department, approved the transfer. Shortly thereafter, Cummings received permission to do the same. She subsequently sent a formal letter of resignation to the Bakers in February 1991 and became a member of the Simmonses' distribution network one month later, taking nineteen down-line distributors with her.

II

At issue is the effect of a provision in the BRM on the propriety of Kerkstra's decision to waive the two-year inactivity requirement for the Simmonses and Cummings. This provision reads:

> The Rules are designed to preserve the benefits available to all independent distributors under the Amway Sales and Marketing Plan. To this end, Amway reserves to itself the sole right to adopt, amend, modify, supplement, or rescind all or such a portion of the Rules, as necessary, in order to promote the goals, objectives and benefits of the Amway Sales and Marketing Plan.

Defendant concedes that it is contractually bound by the BRM and that its decision to allow the Simmonses and Cummings to transfer violated the two-year rule. However, defendant relies on the reservation-of-rights provision to justify its action. Alternatively, defendant argues that plaintiffs may not invoke their contractual rights under the BRM because they already had breached that contract by failing to properly supply, train, and motivate their down-line distributors with weekly meetings and regular mail contact and by attempting to

involve their distributors in the Matol distribution scheme.

The circuit court order did not specify under which court rule it was granting summary disposition. Defendant submitted its motion under both MCR 2.116(C)(8) and (10). However, it is apparent from the circuit court record that the motion was decided under MCR 2.116(C)(10). We will review the matter accordingly.

A motion for summary disposition under MCR 2.116(C)(10) tests whether a genuine issue of material fact remains upon which reasonable minds could differ. In making this determination, a court must review all relevant affidavits, depositions, admissions, and other documentary evidence and construe the evidence in favor of the nonmoving party. *Farm Bureau Mutual Ins Co of Michigan v Stark,* 437 Mich 175, 184-185; 468 NW2d 498 (1991).

When deciding a motion for summary disposition in a claim for breach of contract, a court may interpret the contract only where the terms are clear. If the terms are ambiguous, a factual development is necessary to determine the intent of the parties, and summary disposition is inappropriate. *SSC Associates Ltd Partnership v General Retirement System of the City of Detroit,* 192 Mich App 360, 363; 480 NW2d 275 (1991).

III

The circuit court concluded that the reservation-of-rights clause in the BRM permitted defendant to modify the two-year rule. We believe that the court's interpretation was not the only reasonable interpretation and conclude that the contract was ambiguous.

The power to amend, modify, or rescind rules

does not encompass necessarily the power to create exceptions to rules case by case. A reasonable person could determine that the term "rule" refers to a policy that applies to everyone and, thus, that "modification" of a "rule" involves a change affecting everyone equally, a change in the BRM itself. See, e.g., *Cain v Allen Electric & Equipment Co,* 346 Mich 568, 580; 78 NW2d 296 (1956); *Dalton v Herbruck Egg Sales Corp,* 164 Mich App 543, 546; 417 NW2d 496 (1987). Such an interpretation also would make common sense, because a reservation to change any rule at will case by case would essentially render plaintiffs' rights under the BRM illusory.

Accordingly, the circuit court erred in granting defendant's motion for summary disposition. However, because the contract is susceptible to more than one interpretation, we decline to grant plaintiffs' request for an order of summary disposition in their favor.

IV

Defendant argues that any breach of contract by it was rendered nonactionable by plaintiffs' breach of the provisions of the BRM. "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Flamm v Scherer,* 40 Mich App 1, 8-9; 198 NW2d 702 (1972). See also *Nat'l Teleinformation Network, Inc v Michigan Public Service Comm,* 687 F Supp 330, 337 (WD Mich, 1988); 5 Callaghan's Michigan Civil Jurisprudence, § 249, pp 809-810. However, that rule only applies when the initial breach is substantial. *Baith v Knapp-Stiles, Inc,* 380 Mich 119, 126; 156 NW2d 575 (1968). See also Callaghan's, *supra,* § 249, p 810.

Here, there is an issue of fact concerning whether plaintiffs breached the contract substantially. Defendant alleges that plaintiffs failed to properly supply, train, and motivate their down-line distributors as provided in the BRM. Defendant points to the terms of the BRM, which required plaintiffs to conduct weekly sales meetings and maintain frequent mail contact with their down-line distributors, and to the complaints from those distributors regarding plaintiffs' performance. The record evidence reveals, however, that plaintiffs opened their warehouse for pickup from 3:00 P.M. to 5:00 P.M. twice a week and that they used this time to discuss training and motivation. In addition, they set up lunch appointments and dinners with their distributors to discuss Amway business. With regard to their sale of Matol products, plaintiffs dispute that they ever solicited distributors. The evidence, construed in plaintiffs' favor, does not conclusively demonstrate a substantial breach of contract. Accordingly, summary disposition was not proper on the breach of contract claim.

V

Because an issue of fact exists regarding the meaning of the reservation-of-rights clause, we cannot say that summary disposition was appropriate with regard to plaintiffs' claim under § 3 of the Michigan Consumer Protection Act (MCPA), MCL 445.903(1); MSA 19.418(3)(1). Plaintiffs allege that defendant failed to reveal the material fact that it could change the rules in the BRM unilaterally case by case under the reservation-of-rights provision. The MCPA claim is essentially an extension of the breach of contract claim. Because the reservation-of-rights clause is ambiguous and, therefore, arguably misleading and confusing, plaintiffs have

a justiciable claim that defendant engaged in an unfair and deceptive commercial practice by causing them to rely on the clause. Cf. *Lesatz v Standard Green Meadows,* 164 Mich App 122, 128; 416 NW2d 334 (1987) (holding that a lease provision did not violate the MCPA where it was not ambiguous, confusing, or misleading with regard to the plaintiffs' rights, obligations, or remedies).

VI

Notwithstanding our resolution of the preceding issues, the circuit court did not err in granting summary disposition of plaintiffs' fraud claim. Again, plaintiffs base their claim on defendant's alleged misrepresentation of the meaning of the reservation-of-rights provision. To constitute fraud, the misrepresentation in question must be predicated on a statement of past or existing fact. *Kamalnath v Mercy Memorial Hosp Corp,* 194 Mich App 543, 554; 487 NW2d 499 (1992). A mere promise that is broken is neither fraud nor evidence of fraud. *Marrero v McDonnell Douglas Capital Corp,* 200 Mich App 438, 444; 505 NW2d 275 (1993). The reservation-of-rights provision was not a statement regarding past or existing facts. Accordingly, the circuit court did not err in dismissing plaintiffs' fraud claim.

Affirmed in part, reversed in part, and remanded.