# STATE OF MICHIGAN

# COURT OF APPEALS

SOUTH KENT RECREATION ASSOCIATION,
a/k/a SKRA,

UNPUBLISHED
April 23, 2015

Plaintiff/Counter-Defendant-
Appellant,

v

No.   320402
Kent Circuit Court

CITY OF WYOMING,

LC No.   12-004294-CK

Defendant/Counter-Plaintiff-
Appellee.

Before:  METER, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Plaintiff South Kent Recreation Association (SKRA) appeals as of right from an order denying its motion for summary disposition and granting summary disposition to defendant city of Wyoming (the city).  We affirm.

In an agreement dated November 20, 2000, SKRA and the city entered into a recreational facilities agreement (RFA) whereby SKRA agreed to develop certain recreational facilities, such as baseball fields, within a park owned by the city.  The agreement specified that during the term of the RFA, SKRA (which is not affiliated with the city) could use the park for recreational purposes.  The city agreed to "develop and maintain a level and standard of service reflective in all park settings," such as landscaping and trash removal.  The RFA also stated, in part:

4.   The City hereby grants SKRA a non-exclusive, revocable license, attached hereto as Exhibit A, to use the Park for the purposes provided herein for a period of twenty-five (25) years from the date of the License Agreement, in accordance with the terms of this Agreement.

5.   Except by mutual agreement of the Parties, SKRA may not be divested of the facilities constructed by SKRA in accordance with this Agreement.

6.   In the event the Parties mutually agree to terminate this Agreement prior to the expiration of the License Agreement, SKRA's and the City's usage rights to each other's facilities granted in this Agreement shall also be terminated. The City shall give written notice to SKRA stating the park improvements

-1-

provided at SKRA's cost the City wishes to keep. The City shall pay SKRA the fair market value of these improvements in cash. If the parties cannot agree on the fair market value within thirty (30) days, the Parties shall jointly select an appraiser. The decision of the appraiser shall be binding on both Parties. Payment shall be made within forty-five (45) days after the fair market value is determined. SKRA may remove any property improvements not retained by the City within three (3) months after the City gives its notice above. Any improvements not removed by SKRA shall become the property of the City.

7. Upon expiration of this License Agreement, unless the Parties agree to an extension of said License Agreement, all improvements made to the Park by SKRA will become the sole property of the City.

* * *

15. In return for use and development of the property, ensuring SKRA's priority of use, and allowing for facility improvements, SKRA shall:

a. Provide an annual payment of $12,000, payable in $1,000 increments monthly, beginning January 1, 2001.

b. Provide a payment of $6000 to retroactively provide for the use of the facilities and its related improvements between July 1, 2000 and December 31, 2000, due no later than October 31, 2001.

c. Agree to assume the cost of all custodial and development needs for SKRA's recreation programming. These items shall be in parity, to the extent possible, with other similar usage agreements.

d. Designate equipment and supplies that shall be available to the City of Wyoming Parks and Recreation Department. If equipment and supplies are not returned in satisfactory condition, reasonable wear and tear expected, the City of Wyoming will be responsible for depreciated replacement value. SKRA and the City shall provide for adequate storage for City of Wyoming Parks and Recreation Department & SKRA equipment and supplies.

The license agreement, also dated November 20, 2000, stated, in part:

1. SKRA shall have a non-exclusive, revocable license to use the . . . property[.]

2. This License Agreement shall be for a period of twenty-five (25) years and six months, commencing July 1, 2000 and terminating on December 31, 2026.

3. The License shall be revocable only in accordance with the terms of the [RFA] which is attached hereto and made a part hereof. All other terms of the License shall be in accordance with said Agreement.

In an affidavit dated November 12, 2013, the Director of Community Services for the city, Rebecca Rynbrandt, explained that the parties' agreement required approximately $300,000 from the city to provide for the park facilities and approximately $150,000 from SKRA. Rynbrandt explained that "[t]he $150,000 to be provided by SKRA was advanced by the Special Assessment Fund of the City of Wyoming and was to be repaid by SKRA under the terms of the provisions of the [RFA] at $1,000 per month." Rynbrandt averred that "[a]s of December 31, 2011, SKRA was in arrears to the City of Wyoming in the amount of $12,450." She stated that "the Wyoming City Council terminated the License Agreement and [RFA] . . . due to the substantial breach of the Agreement by SKRA in failing to make the requirement payments."

On May 10, 2012, SKRA filed what it referred to as a "complaint for compensation for improvements and additions made by plaintiff to a certain facility in Wyoming, Michigan[,] and request for injunction against the use of plaintiff's improvements during the pendency of this action." SKRA stated that the city terminated the RFA and License Agreement "on or about January 3, 2012 . . . ." SKRA complained that the city had violated paragraph 6 of the RFA by not paying SKRA for improvements made to the park. SKRA stated that "during the term of this agreement [it] spent in excess of $300,000.00 on the facility." SKRA requested compensation, the appointment of an appraiser, rental fees, and an injunction against disposal of improvements made by SKRA.

On June 4, 2012, the city filed a counterclaim, stating that it had provided SKRA a zero-interest loan "to be paid back at the rate of $1,000 per month over the 25 year period of the [RFA]." The city alleged that it loaned SKRA $256,934 and that, as of December 31, 2011, SKRA was delinquent in payments under the RFA by the amount of $12,450. It stated that "the current amount due and owing to the City of Wyoming is $154,930." In response to requests for admissions, SKRA admitted that "as of December 31, 2011 [it was] delinquent in payments pursuant to the [RFA] in the amount of $12,450." Various officers of SKRA averred in affidavits that there was never any loan made by the city to SKRA.

On July 2, 2012, the court entered an order stating that the parties "will attempt to agree on the property that's claimed by both parties" and "will attempt to agree on an appraiser" but that "this matter can be brought back to the court . . . ."

After unsuccessful attempts to settle, the city filed a motion for summary disposition under MCR 2.116(C)(8) and (10) on November 13, 2013. Among other things, the city cited paragraph 7 of the RFA, which stated that "[u]pon expiration of this License Agreement, unless the Parties agree to an extension of said License Agreement, all improvements made to the Park by SKRA will become the sole property of the City." The city also pointed out that SKRA had admitted to the delinquency in the payments under the RFA. It stated that SKRA "is in material and substantial breach of the [RFA] and is therefore prohibited by law from attempting to enforce the provisions of that Agreement." It stated that "the contract has expired as of its termination by the City . . . and therefore the City is entitled to retain all improvements . . . pursuant to paragraph 7 . . . ." In its brief in support of its summary disposition motion, the city stated that "[although it will be argued that the intent of the parties was that expiration meant 25 years, it is also undeniable that the intention of the parties was that SKRA would make the payments required under the terms of that agreement."

-3-

In its response to the city's motion for summary disposition, SKRA stated that the city "by unilateral action terminated the Agreement and barr[ed SKRA] from the facilities." SKRA asserted that the city's action "triggered the relief set forth in paragraph six." SKRA stated that "[t]he Agreement does not provide for termination based on delinquent payments . . . and had [the city] wanted a provision which terminated for nonpayment, it should have been a part of the Agreement." SKRA requested that the court grant it summary disposition under MCR 2.116(I)(2), stating that only the city had breached the RFA and that the city owed SKRA $235,549.52 plus interest, fees, and costs, for improvements provided. SKRA also stated that there was no evidence of any loan between the parties.

Subsequently, the city filed an additional brief in which it admitted that the issue of the alleged loan was essentially irrelevant and that the city "terminated the agreement due to [SKRA's longstanding] failure to make the payments required under the terms of the RFA."

At oral arguments on January 17, 2014, the court stated that it was "satisfied" that SKRA had substantially and materially breached the RFA. The trial court issued an order stating, in part:

> The [c]ourt having determined that [SKRA] substantially and materially breached the agreement between the parties which was the subject of this action and [the city] having stipulated on the record that if the [c]ourt granted [the city's] Motion for Summary Disposition and denied [SKRA's] Motion for Summary Disposition, [the city] would voluntarily dismiss [its counterclaim] . . . IT IS HEREBY ORDERED [that the city's motion for summary disposition is granted, SKRA's motion for summary disposition is denied, and the claim and counterclaim are dismissed with prejudice].

We review de novo a trial court's decision regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 587 NW2d 817 (1999). We also review de novo the interpretation of a contract. *St Clair Medical, PC v Borgiel*, 270 Mich App 260, 264; 715 NW2d 914 (2006). "The goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *Id*.

SKRA admits on appeal that it breached the contract, but argues that "reasonable minds could differ as to whether the breach of the [c]ontract by [SKRA] warrants rescission."

We find "rescission" to be a somewhat inapt concept in the present case. The reality is that SKRA initiated its lawsuit to obtain relief under the RFA. Indeed, SKRA, in its complaint, relied heavily on paragraph 6 of the RFA. The salient fact, however, is that once SKRA substantially breached the contract, it was prohibited from maintaining an action against the city for the city's alleged subsequent breach or failure to perform under the contract. *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994). There can be no reasonable dispute that SKRA's failure to make the $1,000 monthly payments such that it was in arrears for $12,450 constituted a substantial breach. Cf. *id*. at 651. Indeed, the contract made clear that SKRA was to make these payments "[i]n return for use and development of the property, ensuring SKRA's priority of use, and allowing for facility improvements . . . ." The payments

were obviously an integral part of the parties' agreement and the requirement for the payments was worded unambiguously.

SKRA contends that the city lacked the authority to enter into the agreement with SKRA in the first instance because the city charter states that the city cannot "rent or let public property for a period longer than three years" unless certain conditions have been met. It also contends that the trial court's decision amounted to an illegal taking because the city "took away SKRA's property and property interest without providing any compensation." First, these arguments were not raised below and are not properly before this Court. *Polkton v Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005); *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234 n 23; 507 NW2d 422 (1993). At any rate, we find no basis for concluding that the RFA and the licensing agreement were leases, and we further note that any loss of property by SKRA was due, simply, to its own breach of the RFA.

SKRA further contends that it should be provided compensation to be restored to the "status quo" in conjunction with a rescission. See, e.g., *Grabendike v Adix*, 335 Mich 128, 140-142; 55 NW2d 761 (1952). We do not, however, characterize this action as one involving rescission but rather as one in which SKRA was attempting to enforce the terms of a contract that it had first substantially breached. *Michaels*, 206 Mich App at 650. SKRA also makes an argument that the city, by virtue of the trial court's decision, is deriving an "unconscionable advantage." In addressing this argument, SKRA states that the city obtained SKRA's improvements by way of paragraph 7 of the RFA but that this, in turn, violated paragraph 5 of the RFA, which stated that "[e]xcept by mutual agreement of the Parties, SKRA may not be divested of the facilities constructed by SKRA in accordance with this Agreement." Once again, however, we note that once SKRA substantially breached the contract, it was prohibited from maintaining an action against the city for the city's alleged subsequent breach or failure to perform under the contract. *Id*. Lastly, SKRA appears to be making a separate argument that it is entitled to quantum meruit relief. We decline to address this argument because it was not pleaded in the complaint or otherwise raised below. *Polkton*, 265 Mich App at 95. We additionally note that the concept of quantum meruit was inapplicable in that SKRA relied on the express contract between the parties. See *Borisoff v Schatten*, 335 Mich 684, 686; 57 NW2d 430 (1953), and *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 199; 729 NW2d 898 (2006).

Affirmed.


/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Mark T. Boonstra

-5-