NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0289n.06
No. 19-1927

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

May 26, 2020
DEBORAH S. HUNT, Clerk

L.A. INSURANCE AGENCY FRANCHISING, )
L.L.C., )
                                           )
        Plaintiff-Appellant, )
                                           )    ON APPEAL FROM THE
v. )    UNITED STATES DISTRICT
                                           )    COURT FOR THE EASTERN
SULEIMAN KUTOB, et al., )    DISTRICT OF MICHIGAN
                                           )
        Defendant-Appellees. )

Before: GUY, THAPAR, BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. This case involves the enforcement of a settlement agreement between five Nevada-based insurance agencies and their franchisor, L.A. Insurance Agency Franchising, LLC (LAIA). The agencies tried to put to bed their dispute with LAIA over their franchise agreements, but LAIA failed to perform its settlement-related obligations to release a tranche of commission money earned by the agencies and to send letters to various of the agencies' insurance carriers notifying them of the settlement. After giving LAIA several opportunities to perform, but with no luck, the agencies moved to enforce the settlement. The district court granted their motion, ordering LAIA to fulfill its outstanding obligations and to pay the agencies' attorneys fees incurred in bringing the motion. LAIA seeks to overturn the district court's order, arguing that the settlement agreement cannot be enforced because LAIA's failure to perform under the settlement was excused so as to render LAIA's obligations moot. We disagree and accordingly **AFFIRM**.

## I.

### A. Legal Disputes Relating to the Original Franchise Agreements

LAIA is a domestic limited-liability insurance agency with headquarters in Royal Oak, Michigan. It licenses its "L.A. Insurance" trademark to more than 180 insurance agency franchisees throughout the country. In March 2008, LAIA entered into five franchise agreements with defendant-appellee Suleiman Kutob. The first three of the five agreements were executed on March 31, 2008, when LAIA officially licensed three "L.A. Insurance" agencies within the city of Las Vegas, Nevada—identified as NV5, NV10, and NV16. The final two agreements were executed on June 19, 2008 and September 18, 2013, to franchise two more Nevada-based agencies—NV6 and NV33, respectively. Kutob signed personal guaranties for NV5, NV6, NV10, and NV16, and Kutob and defendant-appellee Viviana Gutierrez-Garcia signed a personal guaranty for NV33. The five franchise agreements contained identical language and were all set to expire ten years from the date they were signed, unless they were terminated sooner pursuant to the terms of the agreements.

On March 28, 2018, LAIA sent to letters to Kutob, NV5, NV10, and NV16, reminding them of the March 31, 2018 pending expiration date of their franchise agreements. The letters also referenced their post-expiration obligations under the agreements. In response Kutob, NV5, NV10 and NV16 requested a meeting with LAIA for April 23, 2018. LAIA replied by asking those franchisees to confirm that they would "continue operating the agencies per the status quo and otherwise in compliance with the franchise agreements." RE 33 Preliminary Injunction Order, PageID 1120. And, although the April 23, 2018 meeting did not result in comprehensive agreement as to new franchise agreements, the parties collectively agreed to maintain the status quo, based on the terms of the original franchise agreements.

However, after the April 23 meeting, none of the parties adhered to the status quo. In particular, on June 19, 2018, the franchisees attempted to incorporate new insurance agencies, under the name "EZ Insurance Agency, LLC," at the locations NV5, NV6, and NV16. *Id*. at 1121. Reacting to this attempted incorporation, on July 24, 2018, LAIA filed a lawsuit in the U.S. District Court for the Eastern District of Michigan, alleging that the franchisees violated the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and breached various franchise agreements.[1] On the same day, the franchisees filed a complaint alleging various state-law claims against LAIA in state court in Las Vegas, eventually moving for expedited injunctive relief on August 8. After the state court granted injunctive relief to the franchisees, the Las Vegas case was removed to the United States District Court for the District of Nevada, which entered a temporary restraining order against LAIA on August 23, 2018. On September 8, 2018, the case was transferred to the United States District Court for the Eastern District of Michigan, where the Nevada TRO against LAIA was resolved, and the franchisees' state-law claims were eventually incorporated with LAIA's case against them.

On August 13, 2018, LAIA discovered that in violation of the original franchise agreements, NV5, NV6 and NV16 had removed the LA Insurance name from their locations, replacing it with signage that identified the agencies as "EZ Insurance." RE 33, PageID 1121. Nonetheless, the agencies were still reportedly using the same phone numbers, and other than NV16, handing out business cards with the L.A. Insurance name and logo. In addition, according to LAIA, NV10 had posted a notice at its location, indicating that in October 2018 its "name [would] change to 'EZ Insurance' and its location [would] move to the same location as NV16." *Id.* (citing ECF 6-1, PageID 429 (affidavit of Fateh Alchy, territory developer for LAIA in Nevada, Arizona and Texas)). Citing these actions in breach of the original franchise agreements, LAIA

---

[1] LAIA maintains that the filing of the July 24, 2018 lawsuit served as notification of its intent to terminate the NV33 franchise owned by Kutob and Gutierrez-Garcia.

filed a motion for a preliminary injunction in the Eastern District of Michigan. The motion was granted on November 8, 2018.

### B. The Settlement Agreement

Following the grant of a preliminary injunction against the franchisees, the parties mediated a settlement, "Confidential Settlement Agreement and Release" ("Settlement Agreement"), which was executed in written form on March 5, 2019. RE 43-2, PageID 1209, 1221-23. The parties agreed, however, that its provisions were to be considered retroactively effective, beginning on March 1, 2019.

The material portions of the Settlement Agreement included the two following obligations at issue in this appeal:

> First, LAIA agreed to release the commissions that had been earned by the franchisees, but had been withheld. The first tranche of these commissions, representing forty percent of the withheld commissions, were to be sent to the franchisees upon LAIA's receipt of the new franchise agreements made between the parties. The remaining sixty percent tranche of the withheld commissions were to be released upon the franchisees' installation of new signage at their franchise locations, which LAIA had the discretion to approve.
>
> Second, LAIA agreed to notify in writing the insurance carriers that had previously worked with the franchisees, but had temporarily suspended the relationships during the litigation as per LAIA's instructions, that the parties had settled.

The parties later amended the Settlement Agreement to alter one of the terms of the existing franchise agreements, with the amendment officially executed by the franchisees on March 26, 2019.

On April 3, 2019, the franchisees sent the executed amendment to LAIA, accompanied by a cover email confirming that they had "complied with everything under the settlement agreement," RE 43-2, PageID 1250, including installing the new LA Insurance signage at the designated locations. As per the agreement of the parties, this notice then triggered the obligation of LAIA to approve the signage within a seven-day period. *Id.* at PageID 1227.

On April 4, 2019, LAIA's counsel responded by email, stating that "[a]ll parties have completed Franchise Agreement for [franchise location] NV5." R. 43-1, PageID 1187. On April 29, 2019, LAIA's counsel followed up, indicating in writing that the remaining franchise agreements had been completed as well. *Id.* at 1187-88; RE 45, PageID 1300-01. It is undisputed that LAIA never raised any objection to the signage by April 10, 2019, the date by which its approval was required. Rather, on April 11, 2019, LAIA indicated it would make "immediate arrangements" to release the withheld commissions to the franchisees. RE 43-1, PageID 1175-76; RE 43-4, PageID 1272-73.

LAIA, however, did not release those funds. Instead, on April 12, 2019, LAIA's counsel raised inquiries about the signage installed by the franchisees and their specific franchising fees. According to the franchisees, this was the first time LAIA made such inquiries and LAIA's counsel incorrectly stated, also for the first time, that "[r]elease of the first 40 percent of the commissions [would be] contingent on L.A. Franchising's written approval of [the Kutob parties'] new signage." RE 43-2, PageID 1255. LAIA claims that this email served as notice to the franchisees that the franchise agreements were incomplete. However, the franchisees argue that LAIA did not allege in the email that the franchise agreements were incomplete in any manner, nor had LAIA made any indication of any such complaint prior to April 12, 2019. Rather, the franchisees argue that, as per the agreement of the parties, because the franchise agreements were in fact completed, even absent the new signage being installed, LAIA was obligated to release the initial forty percent tranche of withheld commissions.

Subsequent written acknowledgments exchanged between the parties suggest a mutual understanding that the existing franchise agreements were complete. Specifically, an email sent to LAIA on April 15, 2019 by the franchisees' counsel stated that (1) the franchise agreements

5

were complete; (2) the franchisees' signage had been approved by LAIA's agent; and (3) the franchisees had committed to pay the franchising fees immediately to LAIA. RE 43-2, PageID 1254. Moreover, on April 17, 2019, LAIA wrote to the franchisees, acknowledging receipt of the franchising fees and promising to release the commissions to them on receipt of the "replacement checks" from the Progressive Insurance Company. RE 43-1, PageID 1193-94. Nowhere in this correspondence did LAIA state that the franchise agreements were incomplete, or that the franchisees had failed to fulfill any other obligation enumerated under the Settlement Agreement. In a second email exchange, on April 17, 2019, LAIA even indicated that it would "take care" of the second tranche (sixty percent) of commissions on the following day.[2] *Id.* However, LAIA concedes that following this correspondence, it only released the first tranche (forty percent) of the withheld commissions, thus withholding the remaining sixty percent. LAIA also acknowledges that it did not send the agreed-upon notification letters of the parties' settlement to the franchisees' former insurance carriers.

### C. The Franchisees' Motion to Enforce the Settlement Agreement

Several weeks passed following the April 17 exchange; yet, still, LAIA failed to release the outstanding commissions or send the required letters to the insurance carriers. Accordingly, on May 24, 2019, franchisees filed a motion in the Eastern District of Michigan to enforce the Settlement Agreement. This remedy was authorized under Section 9.11 of the Settlement Agreement. RE 43-2, PageID 1232.

To demonstrate LAIA's breach of the Settlement Agreement, the franchisees attached the following evidence to their Motion to Enforce: (1) the Settlement Agreement and an amendment agreed to and executed by the parties on March 5, 2019 and March 26, 2019, respectively; (2)

---

[2] This email exchange, as well, did not include any indication by LAIA that the franchise agreements were incomplete or that the Settlement Agreement obligations had not been fulfilled.

declarations from the franchisees related to the fulfillment of their obligations under the Settlement Agreement; (3) written admissions of LAIA's counsel acknowledging that "all parties" had completed the franchise agreements, RE 43-1, PageID 1187-88; (4) emails from LAIA acknowledging its obligation to immediately release the remaining outstanding commissions to the franchisees, (5) declarations and contemporaneous correspondence showing that the franchisees had paid the franchise fees owed to LAIA; and (6) documentation of the installed "LA Insurance" signage on the franchisees' locations.

Accordingly, the franchisees requested that the district court require LAIA to honor its outstanding obligations under the Settlement Agreement. The franchisees also requested their attorneys' fees incurred in bringing their motion to enforce the settlement.

On June 10, 2019, LAIA responded by claiming it had "no obligation to perform its obligations under the [S]ettlement [A]greement," RE 44, PageID 1282, because the franchisees had, in fact, committed the first breach of that Agreement by failing to send to LAIA signed lease addenda from several of their landlords. A dispute between the parties then ensued over the materiality of the "lease addenda." Although the Settlement Agreement never mentions the addenda, LAIA claimed that the addenda were included with, and "an important part," of the franchise agreements. *Id.* at PageID 1280, 1282. However, in opposing the Motion to Enforce, LAIA submitted only partially-executed lease addenda for the district court's review, and failed to submit the actual franchise agreements themselves. LAIA also failed to provide any secondary evidence (i.e., declaration, correspondence, etc.) to demonstrate that the addenda were part of the

franchise agreements, or that they were even a significant and material part of the settlement discussions.[3]

What LAIA did reference in its response to the Motion to Enforce, however, was a series of text messages exchanged by the parties on April 12, 2019, in which it indicated that the new signage installed by the franchisees had failed to meet its specifications. These messages had been sent two days after the seven-day window in which LAIA was required to object to the signage (such date, would have been April 10, 2019). LAIA nonetheless tried to justify its delay by stating it had not received pictures of the signs until April 9, 2019.[4] Arguing that LAIA had not challenged any of their evidence supporting the Motion to Enforce, the franchisees in reply offered two emails from LAIA's counsel, where LAIA had acknowledged receipt of the completed franchise agreements.

Evaluating the collective evidence submitted by the parties, the district court ultimately granted franchisees' Motion to Enforce the Settlement Agreement, thus requiring LAIA to (1) send the previously agreed-upon letters to franchisees' former insurance carriers; (2) release the remaining sixty percent tranche of commissions; and (3) pay franchisees attorneys' fees. Explaining its decision, the court first noted that LAIA had never even submitted copies of the franchise agreements, thus leaving open the questions as to whether the addenda were actually included in the agreements, as LAIA claims, and whether, the lease addenda were significant or material to the parties' settlement. Yet, as the court further emphasized, even with the assumption

---

[3] LAIA did not object to its previous admissions (as submitted into the record by the franchisees) that (1) the franchisees had completed the franchise agreements, and (2) therefore, payment of the withheld commissions was due, as stipulated by the Settlement Agreement.

[4] It is unclear whether the Settlement Agreement contained any requirement that LAIA receive pictures of the required signage. Moreover, the franchisees argue in this appeal that at the district court level, LAIA never produced any evidence of previously agreed upon specifications for the signage. Relatedly, they also contend that LAIA never voiced any objection that the franchisees' new signage failed to conform to those alleged specifications, even in LAIA's April 12, 2019 email. Appellee Br. at 8.

that the addenda were important to LAIA, the evidence submitted by the franchisees, showing that LAIA had indicated in writing that the franchisees had completed their obligations under the franchise agreements, appeared definitive in triggering LAIA's obligations under the Settlement Agreement.

Next, the district court indicated that it lacked a basis to address LAIA's objections to the franchisees' fulfillment of their signage obligations, given LAIA had not submitted any signage specifications as to support the existence of an obligatory compliance standard. Rather, the court found significant the fact that the franchisees had offered written notice to LAIA on April 3, 2019 regarding their installation of the new signage—notice that LAIA failed to object to (or even respond to) within the requisite seven-day window as stipulated by the Settlement Agreement.[5]

LAIA now appeals the district court's order to enforce the Settlement Agreement.

## II.

### A. Terms of Summary Enforcement

On appeal, LAIA concedes that the parties settled on March 5, 2019, thus forming the Settlement Agreement that became effective March 1, 2019. Relatedly, LAIA concedes that it failed to fulfill its obligations under that Agreement. Nonetheless, LAIA maintains that the district court abused its discretion by granting franchisees' Motion to Enforce the Settlement Agreement.

An initial issue raised by the district court *sua sponte* was whether it had subject matter jurisdiction to enforce the settlement. "[F]ederal district courts do not possess the inherent power to vindicate their own authority where parties enter into a voluntary agreement resolving their federal lawsuit." *RE/MAX Intern., Inc. v. Realty One, Inc.*, 271 F.3d 633, 641 (6th Cir. 2001)

---

[5] The district court dismissed LAIA's excuse for its failure to respond to franchisees' April 3, 2019 notification of their signage installation until April 12, 2019, stating that its insistence that it did not receive photos of the signage until April 9, 2019 still "did not excuse [its] failure to perform under the contract. RE 48, PageID 1318.

9

(quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376–77 (1994)). This principle might have created a problem for the district court's enforcement of the Settlement Agreement, given that the parties inexplicably had not submitted a proposed, stipulated order of dismissal, as they had been directed to do by the court, nor had they moved to reopen the case by the court-imposed deadline. As the district court noted, the parties neither made their "'obligation to comply with the terms of the settlement agreement . . . part of dismissal," *id.* (citing *Kokkonen*, 511 U.S. at 381), nor did the court explicitly retain jurisdiction to enforce the settlement. However, the district court recognized, and we agree, that under *Kokkonen*, "a district court can exercise jurisdiction if (1) there is 'an independent basis for federal jurisdiction' or (2) grounds exist for ancillary jurisdiction either because (a) 'the dismissed claims are factually interdependent with the disputed terms of settlement' or (b) jurisdiction is necessary to vindicate the Court's authority or for it to function properly." (RE 48, PageID 1314 n.2 (quoting *Kokkonen*, 511 U.S. at 379–80)). The district court correctly held that "the present dispute has an independent basis for federal jurisdiction [that is, it satisfies the requirements for federal diversity jurisdiction], is factually interdependent with the dismissed claims, and must be addressed to vindicate the Court's authority." *Id.*

Having agreed with the district court that subject matter jurisdiction exists, we now "review for clear error the district court's factual determination that the parties had agreed to settlement terms; however, we review the district court's decision to grant a motion to enforce the settlement based on its preliminary factual finding for an abuse of discretion." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001) (citing *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 418 (6th Cir.2000)). "We will [] find an abuse of discretion only when left with the 'definite and firm conviction that the court . . . committed a clear error of judgment in the

conclusion it reached upon a weighing of the relevant factors' or where it 'improperly applies the law or uses an erroneous legal standard.'" *Id*. (internal citations and quotation marks omitted).

### B.  Evidence Showing LAIA Breached the Settlement Agreement

The text of the Settlement Agreement stipulates that all obligations and provisions will be "interpreted in accordance with and governed in all respects by" Michigan law.  RE 43-2, PageID 1232.  Therefore, under governing Michigan law, a party alleging breach of contract must show: (1) "the existence of a contract between [the parties]"; (2) "the terms of the contract"; (3) "that [the adverse party] breached the contract"; and (4) "that the breach caused [the complaining party's] injury."  *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999).  We find no abuse of discretion in the district court's holding that all of these elements were met.

First, as the district court found, there is very little question that a contract existed, as proven by franchisees' attachment of a copy of the Settlement Agreement with their Motion to Enforce.  Second, the Settlement Agreement clearly laid out the terms and obligations owed by both parties following the Agreement's original execution on March 5, 2019, and the execution of the amendment on March 26, 2019.  Third, and importantly, as the district court found, through their declarations, contemporaneous correspondence between the parties and the parties' counsel, and other documents, the franchisees provided  sufficient evidence that they had performed their own contractual obligations, which included: (1) completing the franchise agreements; (2) installing the required L.A. Insurance signage on their franchise locations; and (3) paying the appropriate franchising fees to LAIA.  Of equal importance, franchisees offered sufficient evidence that although they performed their obligations, LAIA failed to fulfill its reciprocal obligations under the Settlement Agreement.  Specifically, as franchisees demonstrated in their attached exhibits, LAIA did not (1) send letters to the franchisees' former insurance carriers

notifying them of the parties settlement; and (2) release the second tranche of withheld commissions to franchisees, a total that amounted to over $ 80,000.[6] The district court did not abuse its discretion in finding that these breaches of the settlement agreement resulted in monetary injuries to the franchisees.

### C. LAIA's Excuses for its Failure to Perform

#### i. LAIA's Failure to Perform Due to Lack of Signed Lease Addenda from Franchisees

To reiterate, LAIA conceded in the district court, and concedes now, that it failed to perform its contractual obligations under the Settlement Agreement. However, it argues that the district court abused its discretion in enforcing the Settlement Agreement because LAIA's nonperformance was excused under Michigan's contractual first-breach doctrine. Namely, LAIA argues that franchisees committed the first breach of the Settlement Agreement in failing to return to LAIA completed lease addenda, which it states were "[i]ncluded in each of the new franchise agreements" and were required to be completed under the original terms of the Settlement Agreement. Appellant Br. at 6; RE 44, PageID. 1282. However, as we outline below, the district court was correct in dismissing this excuse.

"One who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v. Amway Corp.,* 206 Mich. App. 644, 649 (1994); *Flamm v. Scherer,* 40 Mich.App. 1, 8–9 (1972). However, the first breach rule "only applies when the initial breach is substantial." *Michaels*, 206 Mich. App. at 650; *see Baith v. Knapp-Stiles, Inc.*, 380 Mich. 119, 126 (1968).

---

[6] The franchisees did acknowledge, however, that LAIA had released the first tranche of withheld commissions to them, representing forty percent of the outstanding amount.

Therefore, in theory, LAIA offers a valid Michigan state law doctrine that *could* excuse its failure to perform its contractual obligations to franchisees under the Settlement Agreement. However, LAIA fails to meet the second requisite element of this doctrine—that the first breach rule "only applies when the initial breach is substantial." *Michaels*, 206 Mich. App. at 650; *see Baith*, 380 Mich. at 126. To prove "substantiality" in this case then, the district court noted that it would have had to make two related determinations: (1) that the lease addenda were *actually* included in the original franchise agreements; and (2) that franchisees' failure to return them to LAIA was a substantial omission. LAIA did not offer any evidence to support either finding.

a) **The Inclusion of the Lease Addenda within the Original Franchise Agreements**

Attached to their Motion to Enforce filed in the U.S. District Court for the Eastern District of Michigan, franchisees provided declarations stating that the "franchise agreements" had been "fully executed" pursuant to the Settlement Agreement. RE 43-1, PageID 1175; *see also* RE 43-3, PageID 1265. Franchisees also included email correspondence from LAIA's lawyer, dated April 4, 2019 and April 29, 2019, confirming that the franchise agreements had been completed by all parties. RE 43-1, PageID 1187 ("[a]ll parties have completed Franchise Agreement[s]" for the relevant franchisee locations). However, neither party actually provided a copy of the franchise agreements, so as to confirm, as LAIA insists, that the lease addenda were included or not included within the original Agreements.

Yet, regardless of the presence of the actual franchise agreements themselves, the district court correctly determined that LAIA's excuse for its nonperformance—that franchisees had not returned to it signed lease addenda—is unavailing. Certainly, as the district court acknowledged, the lease addenda "may be important to [LAIA's] interests." RE 48, PageID 1316. However, we agree with the district court that subjective feelings of importance "[can]not overcome [LAIA's]

13

own [written] representations that the franchise agreements were completed by all parties." *Id.* at 1317. In fact, as documented by the evidence submitted by franchisees, LAIA's counsel actually "acknowledged receipt of the fully executed franchise agreements," through statements to the franchisees on April 4, 2019 and April 29, 2019 that "[a]ll parties have completed franchise agreements[]." *Id*. at 1316.

Yet, even with this overwhelming evidence weakening its case, LAIA attempts now to offer an additional nuance to its excuse argument, stating that the district court abused its discretion because it actually "misconstrued" the email statements of LAIA's counsel regarding the "completed" franchise agreements. This evidence was "misconstrued," according to LAIA because (1) the emails did not actually come from its counsel; and (2) the language was interpreted incorrectly by the district court. As to the latter proposition, LAIA states that the acknowledging text in the emails—that "[a]ll parties [had] completed franchise agreements[]"—meant only that LAIA "had signed the franchise agreements as well," Appellant Br. at 9, not that the franchise agreement obligations had been fully performed.

However, the problem with LAIA's argument here is two-fold:

First, in the absence of exceptional circumstances, "this court normally will not address an issue not first raised in the district court." *Bartel v. United States*, 99 F.3d 1138 *1 (6th Cir. 1996) (Table). As indicated by the record, LAIA never objected to the email evidence from its counsel acknowledging completion of the franchise agreements when those emails were presented to the district court. In fact, LAIA never even argued to the court that those emails were incorrect in their indication of acknowledgement. Therefore, because LAIA failed to make any objection to this evidence in the court and cites no exceptional circumstances to justify its failure to object to the emails, it is "precluded from raising the issue for the first time on appeal." *Bldg. Serv. Local*

*47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1396 (6th Cir. 1995).

Second, even absent the forfeiture, LAIA's claims do not prevail. LAIA is now placing the blame on a third-party document signing service, "DocuSign," for acknowledging confirmation of the completed franchise agreements. In fact, despite the address and signature of LAIA's counsel being on the emails, LAIA claims that these emails were "automatically generated" from DocuSign, meaning their substantive language "came from DocuSign," as opposed to its counsel.

Though this is a creative, and technologically innovative argument, even it were true, LAIA cannot support its statements, because it cites no evidence on the record that DocuSign authored the text in question. Nor does LAIA provide any critical information that could help this court understand: (1) who authorized DocuSign to send the emails under the name of LAIA's counsel, and with counsel's e-signature; (2) any pattern or practice of LAIA's having used DocuSign in the past to generate "automatically generated" content; or, most critically (3) even if the emails were automatically generated, whether LAIA or LAIA's counsel lacked knowledge or consent of their transmission and text.

Because we find that the district court did not "misconstrue" the email evidence regarding LAIA's acknowledgment of the completed franchise agreements, we hold that the the district court did not abuse its discretion by rejecting LAIA lease addenda excuse for its non-performance of its contract obligations.

b) **The Addenda as a "Substantial" Element of the Settlement Agreement**

Yet, even if LAIA had shown that the franchisees had committed the "first breach" by failing to return all of the signed lease addenda, LAIA would still fail to satisfy the elements of the first breach doctrine under Michigan law, as LAIA fails to show that the addenda were a

"substantial" part of the Settlement Agreement. The district court did not reach the question of "substantiality," given the court's inability to determine whether the lease addenda had actually been included within the franchise agreements.

Notwithstanding LAIA's failure to produce the franchise agreements, however, we also find fatal to LAIA's case its failure to offer any supplementary evidence, in the form of correspondence, memoranda, or declarations, to establish the alleged "substantiality" of the addenda in relation to the franchise agreements or the Settlement Agreement. Moreover, as noted *supra*, not one email sent from LAIA or its counsel to franchisees, where they appear to be *acknowledging* the completed lease agreements, mentions any lease addenda. And, in fact, LAIA's actions suggest that the lease addenda did not constitute a "substantial" provision of the Settlement Agreement or the franchise agreements, given that LAIA started fulfilling its obligations under the Settlement Agreement by releasing to franchisees the initial forty percent tranche of commissions. It would be reasonable to infer that if LAIA had not felt the franchise agreements were "complete" on that date, it would not have even begun performing these Settlement Agreement obligations.

Considering the lack of evidence showing the "substantiality" of the lease addenda in the Settlement Agreement and the franchise agreements, coupled with LAIA's own email statements appearing to acknowledge completed franchise agreements and its actions in fulfilling part of its obligations under the Settlement Agreement, we hold that the district court did not abuse its discretion by rejecting LAIA's excuse for its failure to perform under the Michigan first breach doctrine.

ii.      **LAIA's Failure to Perform Because of Lack of Proper Signage**

Finally, LAIA argued below that its lack of full performance under the Settlement Agreement was excused given "it never approved the new signage installed by [franchisees], in

writing or otherwise." RE 48, PageID 1317 (quoting RE 44, PageID 1283). The district court dismissed this argument, citing email evidence showing that in violation of the terms of the Settlement Agreement, once franchisees' counsel had provided written notice of the new signage on April 3, 2019, LAIA failed to issue any approval or timely objection to the signage within the requisite seven-day window to issue such. LAIA's failure to comply with provisions stipulated to by the parties, therefore, did not excuse LAIA's non-performance. We agree with the district court's holding here, as well.

On appeal, it is unclear whether LAIA is arguing that the district court's conclusion regarding its signage excuse was an abuse of discretion, for LAIA only references the allegedly improper signage in passing on two occasions. Appellant Br. at 5 (indicating that a condition precedent of the settlement agreement was that franchisees "install[] appropriate L.A. Insurance signage"); *id.* at 6 (stating that franchisees "also have not installed the appropriate signage"). LAIA also did not include any mention of the signage within its Statement of the Issues.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Therefore, because LAIA fails to offer any further explanation regarding how the district court abused its discretion when evaluating its signage excuse, we conclude that LAIA has insufficiently preserved this issue for appeal.

**III.**

Because we conclude that LAIA fails to show sufficient excuse justifying its failure to perform its obligations under the Settlement Agreement reached with franchisees on March 5,

2019, the district court did not abuse its discretion by granting franchisees' Motion to Enforce the Settlement Agreement.

We affirm.