*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF DERELL DARNELL JOHNSON, by
TAMEISHA SIOBHAN BRAXTON, Personal
Representative,

        Plaintiff-Appellee,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant-Appellant,

and

TOMEKA ROCHE LEWIS and BRANDON
LAWRENCE BYERS,

        Defendants.

UNPUBLISHED
August 26, 2021

No. 353845
Wayne Circuit Court
LC No. 19-000293-NI

Before: SAWYER, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

Defendant Progressive Marathon Insurance Company ("Progressive") appeals by leave granted from an order of the circuit court denying its motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

This case arises from an automobile accident in the City of Detroit. Defendant Byers was driving a vehicle owned by him and defendant Lewis when, while driving approximately 125 miles per hour, he rear-ended a vehicle in which plaintiff's decedent was a passenger. Three other passengers of the vehicle survived, but the decedent did not.

Lewis and Byers had purchased the vehicle the day before the accident. They procured a no-fault insurance policy online from Progressive, making an initial premium payment by credit card, on February 20, 2018. That same day, Progressive had entered a note in its file that it

suspected fraud and initiated a refund of the premium payment. Another note was entered the next day that it was rescinding the policy due to fraud based upon an unauthorized payment by the credit card. On February 23, Progressive mailed a notice to Lewis and Byers that it had rescinded the policy ab initio due to "fraudulent conduct in connection with your application."

Thereafter, plaintiff filed suit seeking benefits under the Progressive policy. Progressive moved for summary disposition based upon its rescission, relying on *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012). With its motion, Progressive filed affidavits from two of its employees that stated that payment had been declined by the credit card company because the card was fraudulent.[1] According to the affidavits, this resulted in Progressive initiating the rescission of the policy.

Plaintiff responded that, under *Bazzi v Sentinel Ins Co*, 502 Mich 390; 919 NW2d 20 (2018), rescission as against an innocent third party is not automatic and the trial court must balance the equities and that the equities in this case weighed against rescission. Plaintiff further argued that Progressive had not established that the credit card was actually stolen and, therefore, that Lewis and Byers had engaged in fraud. The trial court denied Progressive's motion for summary disposition as well as its motion for reconsideration, both on the basis of whether fraud had been conclusively established and whether the equities weighed in favor of rescission.

At this point, Progressive provided "additional information" regarding the fraud determination, which was quite different than the explanation provided in the earlier affidavits. As noted above, these affidavits stated that this case involved a "chargeback" by VISA; in other words, VISA initiated the refund after it determined the charge was fraudulent. But according to an affidavit provided by William Caudill, a "Manager for Profitability rates and Program Structure for personal lines insurance," Progressive, not VISA, initiated the refund. Caudill's affidavit explains that the insurance application was completed online. Caudill states:

> 6. After the transaction processed, computer programs compare information as put in by the proposed insureds to determine if there is an increased possibility of fraud or it being an improper transaction, based on prior policies with verified fraud. In this case, the computer programs identified that the policy had shared attributes with previously voided policies which had been rescinded. The program does not operate until the information is put into the system and a policy generated.

> 7. It was determined that the IP (internet protocol) address – a specific computer or device that accesses the internet – was used to procure the policy for Lewis and Beyers and was used by 31 other policies that were found to be fraudulent. The Email address to procure this policy for Lewis and Beyers had been used 36 other

---

[1] One of the affidavits, that of Kassia Campbell, a Litigation Claims Specialist for Progressive stated both that the "payment was declined" and that "the credit card company charged back the funds as it was learned that the credit card used to make the payment was fraudulent . . . ." Janeen Copic, a Litigation Underwriting Specialist II stated that "it was learned that the credit card used to make the payment was fraudulent and the payment declined."

times for fraudulent policies. This information was flagged by the computer system and forwarded automatically to Treasury.

8. This information was sent to the Progressive department involved in money transactions, better known as "Treasury." The Treasury personnel reviewed the fraudulent transactions and issued a refund to Chase, which was the bank involved in the VISA transaction; which was a return of the money sent to Progressive initially as the requirements of fraud had been met.

9. Since fraud in the inception of the policy was found to have occurred and Progressive was unable to collect initial payment for this policy, the policy was rescinded and a letter generated to the insured that the policy was void at inception or *void ab initio* and therefore, no coverage exists.

While Progressive had previously relied on the February 21, 2020 note showing a refund due to fraud as evidence that the credit card was stolen, resulting in a chargeback, Progressive now argued that the same note proved that Caudill was correct, and that Progressive refunded the payment for the reasons he explained.

We review the trial court's decision on summary disposition de novo. *Bazzi*, 502 Mich at 398. A motion under MCR 2.116(C)(10) should be granted only if there is no genuine issue of material fact, thus entitling the movant to judgment as a matter of law. *Id.*

We are not persuaded that Progressive has even come forth with evidence proving fraud, much less that there is no genuine issue of material fact regarding fraud. In the trial court, defendant's motion relied on two affidavits, each of which claimed that after the credit card was charged, VISA initiated a chargeback because the credit card was fraudulent. Those affidavits do not prove that the credit card was stolen; they only prove that VISA *believed* the card was stolen. In fact, Progressive has never come forth with evidence showing who the credit card was issued to or whether it had ever been reported stolen. Thus, it is understandable that the trial court would question whether Progressive had even proven fraud.

Casting further doubt is the Caudill affidavit provided by Progressive with its motion for reconsideration. This affidavit gave an entirely different version of events. Now, according to Progressive, *it voluntarily refunded the premium payment* after Progressive, not the bank, concluded that the credit card was involved in fraud. The basis for this conclusion was the fact that the computer used to purchase the policy, as well as the email address used, had been used in other, prior fraudulent applications for insurance. In other words, Progressive assumed that because there was evidence of fraud in the past, this transaction was likely also fraudulent, and it thus refunded the payment of its own volition. The problem with that position is that again, Progressive has only *assumed* that the purchase was made with a stolen or otherwise fraudulent credit card; it has not provided evidence showing that the transaction was actually fraudulent. For that matter, Progressive does not point to any evidence that the computer used to procure the policy was under the exclusive control of Lewis and Byers. That is, as far as we know, it could have been a publicly accessible computer (or an IP address used by multiple computers) that was used by many people and that none of the prior incidents of fraud linked to that IP address were committed by Lewis or Byers.

Perhaps realizing that its argument stands on shaky ground, Progressive, for the first time, now argues that it was plaintiff who bore the burden of disproving fraud. Progressive argues, because it issued a letter rescinding the policy and refunded the credit card payment, that is the status quo, and it is up to plaintiff to prove otherwise. Progressive's position, if accepted, would turn MCR 2.116(C)(10) on its head. Insurers could issue letters rescinding policies for purported fraud, and then, when faced with a lawsuit, seek summary disposition on the basis that the plaintiff has not disproved fraud. It is Progressive who seeks to avoid liability on the basis of fraud, and thus, Progressive bears the burden of proving that fraud occurred. "This [C]ourt has held repeatedly that fraud cannot be presumed, but must be established by a preponderance of the evidence; and the burden of proving it is upon the party who complains of it." *Waldbauer v Hoosier Cas Co*, 285 Mich 405, 408; 280 NW 807 (1938) (quotation marks and citation omitted). Until Progressive comes forward with evidence that would actually prove that a fraudulent transaction took place, it cannot be granted summary disposition. Indeed, Progressive's position that it was incumbent upon plaintiff to disprove fraud is even more untenable given that plaintiff is not even the alleged fraudfeasor. That is, any fraud justifying rescission of the policy would have been committed by Lewis or Byers, but certainly not by plaintiff or plaintiff's decedent.

Because it is premature to conclude that fraud actually occurred, it is also premature to address the alternate basis for denying summary disposition, namely, whether a balancing of equities under *Bazzi* would weigh in favor or against granting rescission. Further factual development may enlighten both issues. Accordingly, we decline to address the issue of the balancing of equities. But if Progressive ultimately establishes fraud which might warrant rescission, the trial court is free to address this issue again.

Progressive also argues that the contract fails for another, independent reason: a lack of consideration. True, an insurance policy is a contract, *Titan*, 491 Mich at 554, and where there is a total failure of consideration, rescission is a potential contract remedy, *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 509; 885 NW2d 861 (2016). But we are not persuaded by the argument. First, the motion for summary disposition sought rescission for one reason, and one reason only: fraud. The argument concerning a failure of consideration was raised only in the motion for reconsideration. A trial court is well within its discretion to decline to consider new legal theories raised for the first time in a motion for reconsideration where those theories could have been raised in the initial motion. *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). Second, and perhaps more importantly, the record now shows that it was Progressive who unilaterally caused the failure of consideration to occur. On the assumption of fraud, Progressive voluntarily refunded the payment that had been otherwise made successfully.[2] Progressive cannot claim that the policy is void *ab initio* because it chose to refund a policy premium without any input from the

---

[2] In its brief, Progressive claims that it "is undisputed that Progressive never received a single penny in premiums for this policy." But the Caudill affidavit would suggest that Progressive received over $1,600 in the initial premium payment (or, in Progressive's terms, over 160,000 pennies) but returned it.

other parties to the contract. If there was a failure of consideration, it was because Progressive chose to cause one.[3]

In conclusion, the trial court correctly denied summary disposition to Progressive because there exists a genuine issue of material fact regarding whether there was fraud which entitles Progressive to rescind the contract.

Affirmed. Plaintiff may tax costs.

/s/ David H. Sawyer
/s/ Mark T. Boonstra
/s/ Michelle M. Rick

---

[3] The first party to substantially breach a contract cannot maintain an action against the other party for breach of that same contract. *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994). Causing a complete failure of consideration is a substantial breach. *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964), cert den 380 US 952; 85 S Ct 1085; 13 L Ed 2d 969 (1965). Having caused the substantial breach, i.e., the failure of consideration, it seems that Progressive cannot now seek relief on the basis that the contract was breached.