*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANNE MARIE HALL,

      Plaintiff/Counterdefendant-Appellant,

UNPUBLISHED
May 18, 2023

v

BASMA EL-BATHY and RAMI S. MOSTAFA,

      Defendants/Counterplaintiffs-
      Appellees.

No. 362063
Oakland County Court
LC No. 2021-189384-CH

Before: LETICA, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

In this breach of contract action regarding the purchase of real property, plaintiff/counterdefendant, Anne Marie Hall (plaintiff), appeals as of right the order partially granting summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10) to defendants/counterplaintiffs, Basma El-Bathy and Rami S. Mostafa,[1] the trial court having determined plaintiff committed the first substantial breach. On appeal, plaintiff contends the trial court erred by: (1) requiring plaintiff to show prejudice caused by defendants' repudiation; (2) conflating the doctrine of anticipatory repudiation and the first substantial breach rule; (3) concluding defendants' repudiation was not a substantial breach; (4) dismissing the claims when contract ambiguity existed; (5) failing to find a substantial breach in defendants' failure to act in good faith and fair dealing; and (6) failing to find any breach on the part of plaintiff was waived. We reverse and remand for proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of a Purchase Agreement (the "Purchase Agreement") executed on May 20, 2021, between plaintiff and defendants for the sale of real property owned by defendants in Troy, Michigan (the "Property"). Plaintiff, a licensed realtor, had been living at the Property as

---

[1] For clarity, when referencing El-Bathy and Mostafa, we will use "defendants." Each defendant will be identified by name when facts or statements are pertinent only to each individually.

defendants' tenant for approximately a year at the time of the execution of the Purchase Agreement.

The purchase price agreed on in the Purchase Agreement was $300,000. The Purchase Agreement states, in relevant part:

> This Agreement is contingent upon [plaintiff] being able to secure a conventional mortgage in the amount of 90% and pay 10% down plus mortgage costs, pre-paid items, and adjustments in cash. [Plaintiff] agrees to apply for such mortgage within 2 calendar days from acceptance of this offer. [Plaintiff] agrees that in connection with said application to lender, [plaintiff] will promptly comply with lender's request for all information required to process the loan application. If a firm commitment for such mortgage cannot be obtained within 27 calendar days from date of acceptance, at [defendants'] or [plaintiff's] written option, this offer can be declared null and void . . . . [Underlining and bold omitted.]

The Purchase Agreement goes on to state: "Closing must take place on or before May 31, 2021."

The day after the Purchase Agreement was executed, El-Bathy sent plaintiff a text message stating:

> Please let us know if you have some free time after 5pm Eastern time today for us to talk. We hate to be doing this, but unfortunately the real estate market in Troy & Chicago has jumped significantly from February when we agreed on a price. At this point, the current selling price would result in compounded loss for us—loss on the house in Troy and further disadvantage in our current home-buying efforts given that sharp spike in home prices over the past few months. We hate these changes in the market, and hate that we have no option but to renegotiate the selling price. Just to give you time to think about this before we talk, we would list the house for $340ishk now. For you, we can accept a minimum of $310k (price includes the 10k for roof) and we would be looking to split the title cost evenly between us. We studied closely house sale prices over the past 2 years for the market that Brooklawn is situated in and think this is quite a competitive price. We frankly are as aggrieved by all these changes as we are sure you are bound to feel, but we are all bound by this aggressive market in which banks are the primary winners. Please think it over and let us know what's a good time for us to talk.

Five days later, plaintiff notified defendants she believed their refusal to adhere to the terms of the Purchase Agreement was a breach of contract and, because of defendants' default, she had recorded a claim of interest. Defendants responded by asserting they "never failed or refused to consummate the sale," and they "expect[ed] the closing to take place no later than May 31, 2021 as the contract requires . . . ."

Plaintiff contends defendants were in sole possession of the fully executed Purchase Agreement until they provided it to the title company, eight days after the Purchase Agreement execution. On the same day, plaintiff's lender composed a letter addressed "[t]o whom it may concern," stating: "The item that we need to proceed is the purchase contract signed by all parties.

When this is received, we can proceed to appraisal and underwriting." The lender received the fully executed Purchase Agreement three days later, after the closing deadline specified in the Purchase Agreement.

Plaintiff requested the parties execute an addendum extending the date of closing 30 days, maintaining defendants' delay in providing the executed Purchase Agreement was a breach of contract, which made it impossible for plaintiff to provide everything required to her lender. The next day, plaintiff submitted an application to her lender to obtain a mortgage to purchase the Property.

Ten days later, defendants' counsel sent an e-mail to plaintiff's counsel stating: "I spoke to my clients. They would be willing to extend the closing deadline to June 28th, provided that your client would be willing to pay her own mortgage insurance premium. If she can agree to this concession, we can put this behind us." Defendants contend plaintiff failed to respond to this offer.

Eleven days later, on June 25, 2021, plaintiff received notification from her lender that her loan was approved on the condition of receipt of her 2020 tax transcripts from the Internal Revenue Service. Defendants allege plaintiff did not notify them of this conditional approval, and they only learned of it through discovery.

Six days later, defendants' counsel contacted plaintiff's counsel through e-mail, stating:

The Purchase Agreement dictated that the closing was to take place no later than May 31, 2021. [Plaintiff] did not secure financing, or close the sale prior to that date. Since then, my clients have waited patiently for [plaintiff] to apply for financing and complete the purchase (though they had no obligation to do so) . . . .

My clients have continued to work towards the closing in good faith, despite the fact that the contract expired on May 31st. They have dutifully and timely complied with all requests from the title company. We offered [plaintiff] a formal extension through June 28th, which she ignored. [Plaintiff] herself requested a timeline which would have extended the closing date through the end of June, but failed to ever provide an addendum to that effect. June has now come and gone.

. . . Unfortunately, my clients need to move on. We are now exercising the option to declare the Purchase Agreement null and void. They will be re-listing the property.

Plaintiff filed a complaint, alleging she had been "willing, ready, and able to purchase," the Property, but "[n]otwithstanding Plaintiff's full compliance with the Agreement, Defendants refused to comply with the terms and conditions of the Agreement and further refused to convey the Property to Plaintiff—without any valid basis." Plaintiff brought a claim of breach of contract against defendants for "advis[ing] Plaintiff they were no longer intending to adhere to the terms of the Agreement and/or refusing to close." Plaintiff also sought specific performance.

Defendants moved for summary disposition of plaintiff's claims under MCR 2.116(C)(8) and (10). Defendants alleged plaintiff breached the Purchase Agreement by (1) failing to apply for a mortgage within two calendar days of the execution of the Purchase Agreement, (2) failing

to provide a firm loan commitment within 27 days of execution of the Purchase Agreement, and (3) failing to close on or before May 31, 2021. Defendants contended plaintiff entered into the Purchase Agreement in bad faith, because she lacked the ability to obtain a mortgage or make the down payment by the closing date.

Plaintiff opposed the dispositive motion, asserting defendants anticipatorily breached the Purchase Agreement when El-Bathy sent the text requesting they renegotiate the purchase price after the execution of the Purchase Agreement, entitling plaintiff to specific performance regardless of her performance of obligations. Next, plaintiff submitted the Purchase Agreement was ambiguous regarding the closing date, requiring court interpretation of the document and rendering summary disposition inappropriate. Plaintiff further contended defendants were in breach on the basis of a failure to act in good faith and fair dealing, citing in particular, their purposeful delay in delivering a copy of the executed Purchase Agreement.

The trial court granted defendants' motion for summary disposition of plaintiff's claims in a written opinion. The trial court found: "Plaintiff's concerns [about] Defendants' May 21 text message asserting a renegotiation of the purchase price, and Defendants' delay in providing a copy of the executed Purchase Agreement until May 28, are both valid." However, the trial court considered these "concerns" only as delays, which extended the deadline for a loan commitment, a deadline plaintiff still failed to meet. The trial court found the text message and delay in the delivery of the executed Purchase Agreement did not cause plaintiff any prejudice once accounted for by a corresponding extension of the loan commitment deadline, and were therefore not substantial or material breaches. "As of May 28," the trial court reasoned, "Plaintiff had the executed Purchase Agreement in hand and, by all accounts, the purchase price in the Purchase Agreement, allegedly repudiated in the May 21 text message, was being honored." The trial court further found that plaintiff's failure to secure a mortgage commitment by the Purchase Agreement deadline was a substantial breach of an express and material provision, for which plaintiff had provided no evidence of cure, and therefore found this the "initial, substantial breach of contract."

Rejecting plaintiff's argument of repudiation, the trial court stated:

Additionally, there is no merit to Plaintiff's argument that Defendants' purported repudiation of the Purchase Agreement on May 21 had lasting ramifications on Plaintiff's ability to enforce the Purchase Agreement beyond June 24. If anything, the ongoing negotiations between Plaintiff and Defendants . . . indicate a willingness to proceed under the previously agreed-upon purchase price, as the purchase price was not part of those discussions. This was a strong indication that any purported dispute over the purchase price was no longer an issue.

On this reasoning, the trial court found defendants appropriately declared the Purchase Agreement null and void, and ruled that summary disposition in favor of defendants regarding plaintiff's claims was proper.[2] This appeal followed.

## II. STANDARD OF REVIEW

"The interpretation of a contract is a question of law reviewed de novo on appeal." *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019) (quotation marks and citations omitted). A trial court's decision on a motion for summary disposition is reviewed de novo. *Batista v Office of Retirement Servs*, 338 Mich App 340, 354; 980 NW2d 107 (2021). A motion for summary disposition premised on MCR 2.116(C)(10)[3] tests the factual sufficiency of the complaint. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

## III. ANALYSIS

The trial court erred in granting summary disposition because questions of material fact existed regarding whether defendants' repudiated the contract terms, whether this alleged repudiation continued through the remainder of the parties' dealings, and whether this repudiation constituted a breach of the implied covenant of good faith and fair dealing or an otherwise substantial breach.

As a preliminary matter, "the primary goal of contract interpretation is to ascertain and effectuate the intent of the contracting parties. The law presumes that the contracting parties' intent is embodied in the actual words used in the contract itself." *City of Grosse Pointe Park v Mich Munil Liability & Prop Pool*, 473 Mich 188, 218-219; 702 NW2d 106 (2005). Courts give contractual language its plain and ordinary meaning unless otherwise defined. *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 471; 688 NW2d 523 (2004). However, "[i]f two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019) (quotation marks and citation omitted). "Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of

---

[2] The trial court also dismissed defendants' counterclaims in favor of plaintiff under MCR 2.116(I)(2). Defendants did not file a crossappeal challenging this ruling or request reinstatement of the counterclaims in the event plaintiff succeeded in her appeal. Therefore, we do not address it.

[3] Because the parties and the trial court considered documentary evidence aside from the pleadings, we treat and consider the motion as having been granted under MCR 2.116(C)(10) rather than (C)(8). *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 494 n 2; 948 NW2d 452 (2019).

the parties in entering the contract. Thus, the fact finder must interpret the contract's terms . . . ." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003) (quotation marks and citations omitted).

Turning specifically to breach of contract, to prove such a claim a party must establish: "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First America Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (quotation marks and citations omitted). But this rule of first breach only applies when the initial breach is substantial. *Id*.

This Court has delineated factors that aid in determining if the first "material" breach is substantial. See *Able Demolition, Inc v City of Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007). "In determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive." *Omnicom of Mich v Giannetti Investment Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997).

> Other considerations include the extent to which the injured party may be adequately compensated for damages for lack of complete performance, the extent to which the breaching party has partly performed, the comparative hardship on the breaching party in terminating the contract, the willfulness of the breaching party's conduct, and the greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract. [*Id*.]

The implied covenant of good faith and fair dealing is also important when assessing breach-of-contract claims. This covenant is an agreement that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hammond v United of Oakland, Inc*, 193 Mich App 146, 151-152; 483 NW2d 652 (1992) (citations omitted). Also, parties to a written contract may waive provisions in their contract. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364-365; 666 NW2d 251 (2003). "[A] valid waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose, or be an implied waiver, evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Patel v Patel*, 324 Mich App 631, 634; 922 NW2d 647 (2018) (quotation marks and citations omitted). Regarding the remedy in cases concerning breaches of real estate contracts, land is "presumed to have a unique and peculiar value, and contracts involving land are generally subject to specific performance." *In re Smith Trust*, 480 Mich 19, 26; 745 NW2d 754 (2008).

Under the doctrine of anticipatory repudiation, "if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Stoddard v Mfr Nat'l Bank of Grand Rapids*, 234 Mich App 140, 163; 593 NW2d 630 (1999). "In determining whether an anticipatory breach has occurred, it is the party's intention manifested by acts and words that is controlling, and not any secret intention that may be held." *Paul v Bogle*, 193 Mich App 479, 493-494; 484 NW2d 728 (1992). Specific to real estate contracts, our Supreme

Court has held when a seller of land anticipatorily repudiates, a buyer need not perform an obligation to tender the purchase price to preserve his right to specific performance. See *Hanesworth v Hendrickson*, 320 Mich 577, 579-580; 31 NW2d 726 (1948).

The trial court failed to address whether defendants "unequivocally declare[d] the intent not to perform" in the May 21, 2021 text sent by El-Bathy. In the text, El-Bathy made the following statements: "we have no option but to renegotiate the selling price;" "we can accept a minimum of $310k . . . and we would be looking to split the title cost evenly between us;" and "we are all bound by this aggressive market." Additionally, and in light of these statements, some of defendants' actions after El-Bathy's May 21, 2021, text message could be interpreted as further evidence of their intent not to perform. For instance, a day before defendants delivered the executed Purchase Agreement, an event which happened only three calendar days and zero business days before the closing deadline, defendants asserted they "never failed or refused to consummate the sale," and they "expect[ed] the closing to take place no later than May 31, 2021 as the contract requires . . . ." This timeline of actions and statements could cause one to conclude that defendants "expect[ation]" of closing before May 31, 2021, was disingenuous and they had no intention of proceeding with the deal at the price term in the Purchase Agreement. This interpretation is especially applicable when considering on June 14, 2021, defendants communicated a willingness to extend the closing date only on the condition plaintiff would pay the $6,210 mortgage insurance premium defendants had agreed to pay in the Purchase Agreement.

Whether an intention not to perform was manifest in defendants' statements and actions currently presents an open question of fact, when evaluating plaintiff's argument the trial court improperly conflated the doctrine of anticipatory repudiation and the first substantial breach rule. Anticipatory repudiation excuses the nonrepudiating party from performing while the repudiation continues. Our Supreme Court has specifically found an anticipatory repudiation excuses a buyer's contractual obligations to tender the full purchase price. *Hanesworth*, 320 Mich at 579-580. This obligation is similar to the obligation to obtain a mortgage in the instant case, the attainment of the loan being a step in the tendering of the purchase price.

The trial court concluded that plaintiff must show prejudice, caused by either the May 21, 2021 text, or the delay in delivery of the Purchase Agreement. The trial court reasoned once the loan commitment deadline was hypothetically extended to account for the delay, no prejudice can be shown by plaintiff. The trial court went on to state that "[a]s of May 28 . . . the purchase price in the Purchase Agreement, allegedly repudiated in the May 21 text message, was being honored," on the basis of its reasoning that "the purchase price was not part of those discussions." But this ignores the fact that following the request to renegotiate and after causing the obstruction of the delay in delivering the Purchase Agreement, defendants repeatedly insisted on changing the terms of the Purchase Agreement. Furthermore, the trial court failed to address plaintiff's deposition testimony that her efforts at securing the financing, and in turn proceed to closing, were hampered by defendants' failure to timely act, including the return of the signed Purchase Agreement, and request for modifications to the agreement.[4]

---

[4] Although plaintiff sat for a deposition which was continued to secure additional information and dates, there was no indication that defendants were deposed.

In sum, in determining defendants' breach was not substantial, the trial court's focus on what it saw as a lack of prejudice was erroneous for two reasons. First, the trial court ignored the anticipatory repudiation doctrine principle that manifestation of one party's continued intention not to perform excuses the other party from having to perform to maintain its rights under the contract—that repudiation, in and of itself, is an event which alters the state of the dealings so as to change the nature of the parties' obligations. Second, the contextual consideration of the timeline and communications reflected by the renegotiation request supports plaintiff's allegation of an intention not to proceed unless there was, in one way or another, a change in the price term; this being the first substantial breach.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michael J. Riordan