*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHEVILLA WILLIAMS,

Plaintiff-Appellant,

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN and FARM BUREAU
GENERAL INSURANCE COMPANY,

Defendants-Appellees.

UNPUBLISHED
May 19, 2025
9:49 AM

No. 368564
Macomb Circuit Court
LC No. 2021-002148-NF

Before: GADOLA, C.J., and MURRAY and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendants summary disposition pursuant to MCR 2.116(C)(7) and (C)(10). We affirm.

## I. FACTS

In February 2012, plaintiff was injured when she was hit by a vehicle while walking across the street. Plaintiff was taken to Botsford Hospital's emergency room, where doctors treated her for lower back, right hip, and joint pain, administered x-rays and CT-scans, and prescribed pain medications. Plaintiff was then released with instructions to follow up for treatment with her primary-care physician.

Plaintiff was receiving chiropractic care through the Eisman Clinic, who billed Medicare and Medicaid for her treatment. Plaintiff stated that, after her previous caregiver died in August 2021, plaintiff's daughter assisted her with her personal needs, for four hours each day, at a rate of $15.00 per hour. However, plaintiff had not yet paid her daughter for providing this "attendant care."

Plaintiff's claims for first-party no-fault personal injury protection (PIP) benefits arising from the subject accident were assigned to defendants under the Michigan Assigned Claims Plan. Plaintiff filed her first lawsuit claiming PIP benefits from defendants in 2013, which the parties

-1-

settled, and filed her second lawsuit in 2016, which the parties settled in 2017. The 2017 settlement agreement and release included the following:

The undersigned, [plaintiff] (hereinafter "Releasor"), for the sole consideration of ONE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($150,000.00), receipt of which is hereby acknowledged, does hereby release, acquit and forever discharge, [defendants], its heirs, assigns, successors, parent business entities, subsidiaries, related business entities, and/or representatives (hereinafter "Releasee") of and from any and all claims, actions, causes of action and demands whatsoever, whether direct or derivative, which Releasor now has on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, injuries, damages, losses and consequences thereof, as more fully set in below arising out of the following occurrence:

A motor vehicle accident occurring on or about February 14, 2012 as pled in greater detail in a complaint filed in the Circuit Court for the County of Wayne, City of Detroit and State of Michigan and previously pending before the Honorable Megan M. Brennan and otherwise known as civil action number Case No. 16-001902-NF.

The release further stated that plaintiff must "satisfy any and all outstanding medical bills" and "attendant care claims" for "accident related care or treatment from the consideration paid." It additionally provided as follows regarding plaintiff's future medical and attendant care:

IT IS FURTHER UNDERSTOOD AND AGREED that Releasor *has received certain, unspecified, valuable consideration for the following limitation on her future no-fault claims, if any*:

• Releasor *agrees to seek treatment related to the aforesaid motor vehicle accident first through the DMC A/K/A DETROIT MEDICAL CENTER. In the event that Releasee refuses to pay for a particular treatment provided through the DMC . . . , Releasor shall be free to seek similar treatment at a different facility.* This term shall remain in effect for so long as Releasor maintains her primary residence within 100 miles of the City of Detroit. If Releasor moves her primary residence outside of that range, the parties shall agree on a health network to replace DMC. If no agreement can be reached, the parties shall arbitrate the decision with Stuart S. Weiner acting as neutral arbitrator and each party selecting its own additional arbitrator.

• Releasor agrees to seek no further treatment at any time with Mendelson Kornblum Orthopedics (including all physicians associated with the practice at any time as well as any affiliated or related entities) after the date of execution of this document. If Releasor does receive treatment from the aforesaid facilities/practices/physicians, Releasor waives any right she may have had to collect payment for same from Releasee. Releasor further agrees that, if she seeks treatment as described in this paragraph, she waives use of any testimony, disability

prescription, or other opinions from the aforesaid physicians to support any other claims for no-fault benefits.

> • Releasor *agrees that, if she requires further attendant care benefits, she will seek same only from properly licensed attendant care agencies which do not have any financial relationship with any family or friends of Releasor.* This includes employment relationships, ownership interests, or referral payments. Releasor agrees that the only claims for attendant care which will be compensable no-fault benefits after the date of execution of this document will be services which were provided by an agency as described herein. [Emphasis added.]

In 2018 plaintiff filed her third lawsuit to collect PIP benefits, which the parties resolved in 2020 by entering into another settlement agreement and release. The 2020 release included the following:

> The undersigned, [plaintiff], (hereinafter "Releasor"), for the sole consideration of SEVENTY THOUSAND DOLLARS AND NO/100 ($70,000.00), receipt of which is hereby acknowledged, does hereby release, acquit and discharge, [defendants], along with their parent, subsidiary, successor and affiliated corporations, as well as their employees, agents, representatives, and attorneys (hereinafter "Releasees") *from any and all claims for both [PIP] benefits through June 15, 2020, which Releasor now has or which may hereafter accrue in the future, on account of or in any way arising out of the injuries and/or damages allegedly sustained as the result of a motor vehicle accident occurring on February 14, 2012.*

> * * *

> It is further [understood] and agreed that *the limitations of Releasor's future no-fault claims entered into on May 16, 2017 and outlined in the executed [2017 Release] . . . shall remain in full force and effect.* [Emphasis added.]

Approximately nine months after the parties entered into the 2020 settlement agreement and release, plaintiff filed her fourth complaint—the one underlying this case—seeking PIP benefits for the medical and attendant-care expenses she incurred after June 15, 2020 as a consequence of her February 2012 accident.

Defendants answered and included a list of "Affirmative and Other Defenses," which did not include the affirmative defense that plaintiff's claims were barred by prior release. Plaintiff then sent defendants a request for the production of a "complete, updated claim file, including a current claim activity log, payment log and any and all correspondence"; plaintiff also requested that defendants admit "that defendant[s] [have] directly received wage loss, replacement services, [and] attendant care proofs." Defendants denied plaintiff's request for that specific admission, stating, "Such claims are either time barred and/or released in prior settlements with Plaintiff," and did not provide an updated claim file. The trial court's scheduling order closed discovery on June 26, 2022.

Ten months after discovery cut-off, defendants moved for summary disposition, arguing that there was no genuine issue of material fact that plaintiff's PIP claims were barred by the 2017 and 2020 releases. Defendants specifically argued that plaintiff could not recover for medical care that DMC did not provide, or for attendant care that her daughter provided, because of the 2017 and 2020 settlement agreements and releases.

Plaintiff responded that the 2017 release provided that if defendants "refuse to pay for a particular treatment provided through the [DMC]," plaintiff was "free to seek similar treatment at a different facility," and that defendants failed to provide "preapproval and/or open claim information for payment to the DMC" when plaintiff presented for treatment, and thereby "refus[ed] to pay" for her DMC medical care. Thus, plaintiff acknowledged she did not receive DMC or DMC-affiliated medical care, but claimed that defendants' refusal to provide preapproval or an open claim letter to DMC allowed her to seek medical care elsewhere, as stated in the 2017 release. Regarding her claims to recover attendant-care expenses, plaintiff asserted that "she was forced to seek attendant care from her [own] daughter," because "there was no preapproval or open claim number for an agency to begin providing attendant care." She further asserted that, although the 2020 release incorporated the terms of the 2017 release, the 2020 release did not itself limit "attendant care claims from family or friends," or the kind of care to "agency-provided attendant care."

Plaintiff filed a supplemental response to defendants' motion, and attached an affidavit as proof that defendants refused to pay for her DMC medical treatment, in which she stated as follows:

> 3. In seeking care for my injuries, I presented to the [DMC] for care for the injuries sustained from the motor vehicle accident. However, upon presenting the Farm Bureau claim number, I was informed that treatment with the DMC and its affiliates was refused, as there was no preapproval from my insurer and no open claim communicated to the [DMC] by [defendants].
>
> 4. Furthermore, the DMC made direct contact with [defendants] upon my presentation and was told that I did not have an open claim or preapproval for treatment through the DMC or its affiliates.
>
> 5. As a result of the refusal for the Defendant to provide preapproval and/or an open claim number, I was denied treatment at DMC and its affiliates for injuries related to the motor vehicle accident.

Defendants replied that the refusal-to-pay exception in the 2017 release (as incorporated into the 2020 release) applied only to medical-treatment expenses, not attendant-care expenses, and that even if defendants failed to provide preapproval or an open claim letter to DMC on behalf of plaintiff, that did not constitute a refusal to pay for plaintiff's DMC medical treatment.

At the hearing on defendants' motion, defendants argued that plaintiff's affidavit should not be considered because it was inadmissible hearsay. Plaintiff also argued that defendants first breached the 2017 release by refusing to pay for her DMC medical care in 2018, so she was thereafter free to seek treatments at non-DMC facilities. The trial court noted that, even if

defendants refused to pay for plaintiff's DMC medical care in 2018, the 2020 settlement agreement and release left the parties with "a clean slate" with "a new agreement in place regardless of what happened previous[ly]," and therefore defendants' alleged breach in 2018 would be irrelevant.

Approximately six weeks after the hearing, while the court's decision was pending, plaintiff moved the court to "enter a default judgment against Defendant[s] for failure to produce the claim file; or in the alternative, require Defendant[s] to produce the claim file." Plaintiff's motion did not mention the pending motion for summary disposition, or assert that the request for the claim file was relevant to the outcome of that motion. On July 13, 2023, the trial court issued an opinion and order granting defendants' motion for summary disposition, and plaintiff's motion to compel was never heard.

Plaintiff then filed a motion for reconsideration, which the trial court denied.

## II. ANALYSIS

On appeal, plaintiff first argues that the trial court erred by granting defendants' motion for summary disposition because there was a genuine issue of material fact regarding whether defendants refused to pay for plaintiff's DMC treatment by not providing preapproval or an open claim letter, thus allowing plaintiff to seek medical treatment at non-DMC facilities. Plaintiff alternatively argues that defendants breached the 2017 release by refusing to cover plaintiff's DMC treatment in 2018, thereby leaving plaintiff free thereafter to seek treatment at non-DMC facilities.

We review de novo a trial court's decision on a motion for summary disposition, *Diamond v Witherspoon*, 265 Mich App 673, 680; 696 NW2d 770 (2005), as well as a trial court's interpretation of statutes and contracts, *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). In reviewing a decision under MCR 2.116(C)(7) and (10), we utilize familiar standards of review. See *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999).

"The scope of a release is controlled by the intent of the parties, as it is expressed in the release." *Gortney v Norfolk & Western R Co*, 216 Mich App 535, 540; 549 NW2d 612 (1996). "If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release." *Id*.

The plain language of the 2017 and 2020 releases required plaintiff to initially seek medical treatment from DMC and DMC-affiliated facilities, and to seek attendant care from a licensed agency. It also provided that the refusal-to-pay exception in the 2017 release applied to medical expenses, not attendant-care expenses, because, without exception, attendant-care expenses must be obtained from "properly licensed attendant care agencies" having no "financial relationship with any family or friends" of plaintiff. As the trial court noted, plaintiff never argued that she received medical treatment from a DMC facility after June 15, 2020, or that defendants received bills from either plaintiff or DMC for any alleged DMC treatment provided to plaintiff that defendants refused to pay. The undisputed evidence presented in Senior Claims Representative Patricia Thelen's affidavits indicated that, after June 15, 2020, there were no DMC or DMC-affiliated medical bills submitted to defendants, and defendants refused none. Moreover, the undisputed evidence revealed that none of the attendant-care expenses submitted to defendants were for care plaintiff obtained through a licensed attendant-care agency; instead they were for

care plaintiff's own daughter provided. Further, Thelen's second affidavit indicated that there was no record of any communication informing defendants that preapproval, or an open claim letter, were needed in order for plaintiff to receive DMC treatment, or agency-provided attendant care. Therefore, the undisputed evidence showed that the refusal-to-pay exception of the 2017 and 2020 releases did not apply, because defendants refused neither to pay for plaintiff's DMC medical treatment, nor to provide preapproval or an open claim letter for plaintiff's care.

Moreover, plaintiff's affidavit contained inadmissible hearsay, and was otherwise in-sufficient to create a genuine issue of material fact. In her affidavit, plaintiff attempted to establish that defendants refused to pay for plaintiff's DMC medical care after June 15, 2020, thereby allowing her to seek medical care from non-DMC facilities. However, in that affidavit, plaintiff provided statements that were allegedly told to her by someone at a DMC facility denying her treatment, and that allegedly occurred between defendants and DMC, and plaintiff offered these out-of-court statements to establish the truth of the assertion that DMC denied plaintiff medical treatment because defendants refused to provide preapproval or an open claim letter. See MRE 801(c). Plaintiff's statements describing the reasons for DMC's denial of care were therefore based on alleged discussions between DMC and defendants, not on her personal knowledge. This was hearsay, and inadmissible pursuant to MRE 802.

The remainder of plaintiff's affidavit was insufficient to create a genuine issue of material fact, because it did not "state with particularity" what type of medical treatment she sought, from which DMC facility and location she sought such treatment, and on which date or dates; it also did not establish that plaintiff communicated to defendants that preapproval or an open claim letter was needed before such treatment could be provided, that defendants refused any such request, or that there was any communication between the parties regarding payment for any DMC medical treatment. See MCR 2.119(B)(1)(b). Therefore, there was no genuine issue of material fact that the 2017 and 2020 settlement agreements and releases barred plaintiff's claims for PIP benefits.

Plaintiff alternatively argues that, aside from whether the refusal-to-pay exception of the 2017 and 2020 releases applied, the medical-lien agreement and conditional payment letter from CMS proved that defendants refused to pay for plaintiff's DMC medical treatment in 2018, leaving defendants responsible for "the first substantial breach" of the 2017 release, allowing plaintiff to thereafter seek medical treatment from non-DMC facilities. "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (quotation marks and citation omitted).

Plaintiff's argument in this regard is inapt, because this case is not a breach-of-contract action, and defendants are not maintaining an action against plaintiff for any failure to obtain DMC medical care. Further, as defendants correctly argue, even if this invocation of contract principles were apt, the plain language of the refusal-to-pay exception of the 2017 and 2020 releases provided that if defendants refused to pay for a "particular treatment" from DMC, plaintiff could properly seek "similar treatment" elsewhere; it did not provide that if defendants refused to pay for *any* treatment plaintiff might thereafter seek *all* future treatment from non-DMC facilities. And, as the trial court correctly noted, the medical-lien agreement and CMS letter related to events occurring in 2018, before the parties signed the 2020 settlement agreement and release incorporating the terms of the 2017 release. Therefore, any refusal to pay for plaintiff's care in 2018 was irrelevant

-6-

to whether plaintiff complied with the 2020 release, which concerned medical care she received after June 15, 2020.

Plaintiff next argues that the trial court erred by granting defendants' motion for summary disposition, and denying plaintiff's motion for reconsideration, because relevant discovery was still pending, and defendants waived the affirmative defense of release by failing to properly plead it or otherwise put plaintiff on notice of that defense.

As noted, we review de novo a trial court's decision on a motion for summary disposition. "We review a trial court's decision on a motion for reconsideration for an abuse of discretion." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). "An abuse of discretion occurs when the decision [of the trial court] results in an outcome falling outside the principled range of outcomes." *Id.* at 625 (quotation marks and citation omitted; alteration in original). This Court has found "no abuse of discretion in denying a motion [for reconsideration] resting on a legal theory and facts which could have been [pleaded] or argued prior to the trial court's original order." *Id.* at 630 (quotation marks and citation omitted).

"[S]ummary disposition granted before discovery on a disputed issue is complete is considered premature. However, summary disposition may be proper before discovery is complete where further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion." *Prysak v R L Polk Co,* 193 Mich App 1, 11; 483 NW2d 629 (1992) (citations omitted).

Discovery closed on June 26, 2022, and defendants filed their motion for summary disposition on April 20, 2023. Plaintiff did not move to compel the production of the claim file in the interim. After defendants moved for summary disposition, plaintiff filed a response and a supplemental response, asserting that defendants "refus[ed] to pay" by failing to provide preapproval or an open claim letter for DMC treatment, and therefore that the refusal-to-pay exception of the 2017 and the 2020 release applied and plaintiff was free to seek medical care at non-DMC facilities. Plaintiff did not mention any outstanding discovery in her written responses, nor did she mention outstanding discovery during the May 20, 2023 hearing on defendants' motion for summary disposition.

Approximately six weeks after that hearing, while a decision on the motion was pending, plaintiff filed a motion to compel production of the claim file. Plaintiff's motion to compel did not indicate that the requested discovery was needed in order for the court to rule on the pending motion for summary disposition. A few days after plaintiff filed her motion to compel, the trial court granted defendants' motion for summary disposition, after which plaintiff moved for reconsideration, arguing for the first time that summary disposition should not have been granted because plaintiff had not obtained defendants' claim file. Plaintiff also failed to establish the likelihood that production of the claim file would provide factual support for her position, because all of the relevant information she sought regarding whether bills from DMC were submitted to, and denied by, defendants, was provided in Thelen's affidavits. See *Prysak* 193 Mich App at 11. Therefore, plaintiff could and should have raised the issue of outstanding discovery before the trial court ruled on defendants' motion. Accordingly, the trial court did not abuse its discretion by denying plaintiff's motion for reconsideration.

Plaintiff first raised the argument that defendants failed to plead prior release, and that she was surprised by this defense and therefore unprepared to offer a substantive response, in her motion for reconsideration.

"Affirmative defenses are not pleadings under the court rules," but they "are highly analogous to pleadings" because they must provide notice to the opposing party of the nature of the defenses, and so pleading requirements apply to affirmative defenses as well. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 230; 964 NW2d 809 (2020). Release is specifically listed in MCR 2.111(F)(3) as an affirmative defense that must be raised in a party's first responsive pleading. Pursuant to MCR 2.111(F)(2), "a defense not asserted in the responsive pleading or by motion" as set forth in the court rules "is waived, except for the defenses of lack of jurisdiction" or "failure to state a claim." However, a court may grant leave to a party to amend affirmative defenses "when justice requires it," which "shall be given freely." *Sands Appliance Servs v Wilson*, 463 Mich 231, 239; 615 NW2d 241 (2000).

Defendants clearly articulated their intent to rely on the 2017 and 2020 settlement agreements and releases in a number of filings before they moved for summary disposition, including in their August 8, 2022 case-evaluation summary, their December 28, 2022 facilitation summary, their January 27, 2023 motion for leave to file for summary disposition, and then in their April 20, 2023 motion for summary disposition. Plaintiff certainly was not surprised by the defense of release, and responded to the motion with a written response and supplemental response, and by presenting oral argument. According to defendants, had plaintiff raised this issue earlier they would have formally sought to amend their affirmative defenses to add release, which the court likely would have granted. We conclude that, because plaintiff's argument rests on "a legal theory and facts which could have been [pleaded] or argued prior to the trial court's" ruling on summary disposition, the trial court did not abuse its discretion by denying plaintiff's motion for reconsideration. *Woods* 277 Mich App at 630.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ James Robert Redford